UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re*:  Jeffrey David Hurley &
      Lyn Marie Hurley,

        DEBTORS.

_____/

CHAPTER 13

CASE NO.  10-35686-dof

EXHIBIT LIST

| Exhibit | Description |
|---------|-------------|
| 1 | Settlement Agreement |
| 2 | Stipulated Order |
| 3 | Donald K. Currie Revocable Trust |
| 4 | Memo and Listing Agreement |
| 5 | Filing Endorsement - J4 Development Consultants LLC |
| 6 | Security Agreement |
| 7 | UCC Financing Statement |

# EXHIBIT 1

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into as of the **30** day of June, 2003, by and among Currie Associates, Inc. ("Currie"), and Lyn Hurley, Jeffrey Hurley (collectively "Hurley"), Environmental Investigations, Inc., J.D. Hurley & Associates, Inc. f/k/a Site Resource Corporation, and Hurley Farms, Inc. (collectively the "Corporate Entities") (Hurley and the Corporate entities each an "Obligor" and together the "Obligors").

1.  RECITALS. This Agreement is entered into with reference to the following facts:

   A.  Lyn Hurley was employed by Currie from June 6, 1992 through June 21, 2002. Lyn Hurley is married to Jeffrey Hurley. The Corporate Entities are owned by Hurley.

   B.  While employed by Currie, Lyn Hurley was entrusted with access to Currie's checking account and the funds therein.

   C.  While employed by Currie, Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit of herself, Jeffrey Hurley and/or the Corporate Entities using funds belonging to Currie. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie's books and records so as to conceal her wrongful actions.

   D.  During her employment with Currie, Lyn Hurley misappropriated funds from Currie totaling approximately Three Hundred Forty Thousand Three Hundred and Seventy Five Dollars ($340,375.00) (the "Misappropriated Funds").

   E.  The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the Corporate Entities.

   F.  On or about June 21, 2002, Currie filed an action against Hurley, Case No. 02-031559-CZ(H), pending in the Lapeer County Circuit Court before Honorable Nick O. Holowka (the "Suit").

   G.  On or about July 1, 2002, a Stipulated Preliminary Injunction was entered by the Lapeer County Circuit Court restraining Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of the Order, from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally.

H. The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the Corporate Entities.

I. The parties, in order to avoid further expense and inconvenience resulting from continuing the prosecution and defense of any claims arising out of the Suit, deem it to be in their best interests and to their mutual advantage to settle, adjust and compromise their claims on the terms and conditions hereinafter provided.

2. CONSIDERATION. In consideration of the execution of this Agreement and the mutual covenants contained herein, as well as the dismissal of the Suit, Hurley and the Corporate Entities agree to pay or cause to be paid to Currie the total sum of $424,724.00, plus interest at the rate of 8% (the "Settlement Sum"), as set forth below. The Settlement Sum is comprised of the Misappropriated Funds ($340,375.00), $60,000.00 for lost interest from the time the Misappropriated Funds were taken through the date of execution of this Agreement, $22,534.00 for Currie's attorneys' fees and costs, $105.00 for Currie's bank fees, and $1,710.00 for Currie's accounting fees.

A. Hurley promises to pay the Settlement Sum as evidenced by a Promissory Note in favor of Currie, dated June **30** 2003 (the "Note", a copy of which is attached as Exhibit A).

B. Upon the sale of Hurley's current residence at 345 E. Oregon Road, Lapeer, Michigan, 48446, Hurley shall immediately pay to Currie at least the sum of $90,000.00. This payment will be made at closing. Hurley acknowledges and represents that the residence is currently for sale with an asking price of $199,900.00, and that they will make their best efforts to sell the residence for an amount equal to or in excess of that amount. Hurley further acknowledges and represents that Currie will be kept apprised of all offers on the residence, and that Currie will have the right to approve any offers or reject any offers Currie believes are insufficient. The intent of this subparagraph is that regardless of the purchase price of this property, Hurley shall pay to Currie at least the sum of $90,000.00 at closing, as well as such other funds as may be available upon that sale.

C. Upon the sale of at least 35 acres of certain property owned by Hurley on Wilson Road in Columbiaville, Michigan, Hurley shall immediately pay to Currie the sum of $120,000.00. This payment will be made at closing. Hurley acknowledges and represents that 35 acres of this property are currently for sale with an asking price of $210,00.00, and that they will make their best efforts to sell the property for an amount equal to or in excess of that amount. Hurley further acknowledges and represents that Currie will be kept apprised of all offers on this property, and that Currie will

have the right to approve any offers or reject any offers Currie believes are insufficient. Hurley further acknowledges and represents that Currie may, from time to time during the duration of this Agreement, demand that further and/or other acreage owned by Hurley on Wilson Road in Columbiaville, Michigan, be placed for sale at a price commensurate with its market value in order to create sufficient funds to repay Currie some or all of the Settlement Sum. The intent of this subparagraph is that regardless of the purchase price of this property, Hurley shall pay to Currie at least the sum of $120,000.00 at closing, as well as such other funds as may be available upon that sale.

D.  No later than June 30, 2006 (three years after the date of execution of this Agreement), Hurley shall pay to Currie all amounts due and owing under this Agreement, together with all unpaid interest. This payment is intended to be a final payment of any part of the Settlement Sum, plus interest, which have not been paid in full as of June 30, 2006. Hurley and the Corporate Entities acknowledge and represent that their inability to sell any property shall not be considered an excusable reason not to pay all amounts due and owing at that time, and that the full Settlement Sum, less any amounts of principal already paid, shall be paid in full on that date.

E.  Immediately upon execution of this Agreement, Hurley shall make payments to Currie in the amount of $1,000.00 on the first day of each month, continuing until all amounts due hereunder are paid in full. Such payments shall be credited half to interest accruing under this agreement, and half to principal.

3.  SECURITY DOCUMENTS. All obligations hereunder shall be secured by the following:

A.  A Mortgage granted to Currie on the residential real property located at 345 E. Oregon Road, Lapeer, MI 48446 in the form attached hereto as Exhibit B.

B.  An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the 75 acre parcel of real property located at 5378 Wilson Road, Columbiaville, MI in the form attached hereto as Exhibit C.

C.  An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the 10 acre parcel of real property located on Wilson Road in Columbiaville, MI in the form attached hereto as Exhibit D.

D. An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the real property located at 303 W. Nepessing Street, Lapeer, Michigan, 48446 in the form attached hereto as Exhibit E.

E. An Assignment of Leases and Rents granted to Currie on the real property located at 303 W. Nepessing Street, Lapeer, Michigan, 48446 in the form attached hereto as Exhibit F.

F. A Security Agreement and Financing Statement covering all assets owned by Hurley in the form attached hereto as Exhibit G.

G. A Security Agreement and Financing Statement covering all assets owned by Environmental Investigations, Inc. in the form attached hereto as Exhibit H.

H. A Security Agreement and Financing Statement covering all assets of J.D. Hurley & Associates, Inc f/k/a Site Resource Corporation in the form attached hereto as Exhibit I.

I. A Security Agreement and Financing Statement covering all assets of Hurley Farms, Inc. in the form attached hereto as Exhibit J.

J. A Guaranty of all obligations hereunder executed by each of the Corporate Entities in the form attached hereto as Exhibit K.

K. A Pledge Agreement granting Hurley's ownership interests in the Corporate Entities in the form attached hereto as Exhibit L.

L. Such further documents as Currie may reasonably feel are necessary to protect and secure the obligations owed to it, including UCC documents, financing statements, etc.

(together with the Note, the "Security Documents").

4. DEFINITION OF INDEBTEDNESS. "Indebtedness," in this Agreement and the Security Documents, shall mean all of the obligations of the Obligors under this Agreement, including without limitation the Settlement Sum, the Security Documents, and all obligations of any and every kind and nature heretofore, now or hereafter owing from the Obligors to Currie, however incurred or evidenced, or by oral agreement or by operation of law plus all interest, costs, expenses and reasonable attorney fees which may be made or incurred by Currie in the disbursement, administration or collection of such obligations, the enforcement of this Agreement, and in the protection, maintenance and liquidation of any collateral.

5. DISMISSAL OF SUIT. Upon execution of this Agreement, the parties shall cause their attorneys to file with the Court a stipulated order of dismissal without prejudice and continuing the Preliminary Injunction, in the form attached as Exhibit M. Ninety one days after full and final payment of the Settlement Sum, and assuming no bankruptcy proceeding has

been filed by Hurley and/or the Corporate Entities, the parties shall cause their attorneys to file with the Court a stipulated order in the form attached as Exhibit N, causing that dismissal to become one with prejudice, and dismissing the Preliminary Injunction.

6.    MUTUAL RELEASES. In consideration of the payment, actions and representations set forth above, as well as the execution of this Agreement under the terms herein, and subject to all of the obligations contained hereunder, Currie, in all of its capacities, on behalf of itself and any other party, person or entity claiming under or through it, each of their successors, assigns, agents, employees, officers, directors, shareholders, parents, subsidiaries of parents, subsidiaries, affiliates, fiduciaries, beneficiaries, trustees, heirs and representatives, hereby releases, discharges and acquits Hurley and the Corporate Entities, as well as each of their agents, attorneys, accountants, banks, financial advisors, officers, directors, predecessors, parents, subsidiaries of parents, shareholders, subsidiaries, affiliates, successors, heirs, personal representatives and assigns, from all claims, debts, demands, defenses, actions, causes of action, suits, dues, sums of money, accounts, bonds, warranties, covenants, contracts, controversies, promises, agreements or obligations of any kind relating or referring to the matters contained within the Suit. Hurley and the Corporate Entities acknowledge that they understand that this release is not effective until 91 days after the final payment of the Settlement Sum, assuming no bankruptcy proceeding has been filed by Hurley and/or the Corporate Entities.

In consideration of the payment, actions and representations set forth above, as well as the execution of this Agreement under the terms herein, Hurley and the Corporate Entities, in all of their capacities, on behalf of themselves and any other party, person or entity claiming under or through them, each of their successors, assigns, agents, employees, officers, directors, shareholders, parents, subsidiaries of parents, subsidiaries, affiliates, fiduciaries, beneficiaries, trustees, heirs and representatives, hereby releases, discharges and acquits Currie, as well as each of their agents, attorneys, accountants, banks, financial advisors, officers, directors, predecessors, parents, subsidiaries of parents, shareholders, subsidiaries, affiliates, successors, heirs, personal representatives and assigns, from all claims, debts, demands, defenses, actions, causes of action, suits, dues, sums of money, accounts, bonds, warranties, covenants, contracts, controversies, promises, agreements or obligations of any kind relating or referring to the matters contained within the Suit, whether individually, jointly or severally, and whether known or unknown as of this date.

7.    REPRESENTATIONS AND WARRANTIES. In making and executing this Agreement, the parties represent, warrant and agree as follows:

A.    The parties have each received independent legal advice from their attorneys with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

B.    The parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other parties hereto with respect to such matter.

C. All information provided to Currie by Hurley or the Corporate Entities used to prepare this Agreement or the Security Documents is true and correct.

D. Jeffrey Hurley and Lynn Hurley own the property commonly called 345 E. Oregon, Road, Lapeer, Michigan 48446 as husband and wife.

E. Hurley holds a 100% ownership interest in the Corporate Entities.

F. A certain asset list provided by Hurley to Currie on or about July 12, 2002 was true, accurate and complete when made and is true, complete and accurate as of the date of the execution of this Agreement.

8. NONDISCHARGEABILITY. Hurley and the Corporate Entities agree that they will not object to the nondischargeability of the obligations set forth herein, including without limitation all payments and security made or given hereunder, in any subsequent bankruptcy of Lyn Hurley, Jeffrey Hurley, or any of the Corporate Entities, or to the filing of this Agreement in any proceeding to enforce any provision of this Agreement.

9. EXECUTION OF FURTHER DOCUMENTS. The parties agree that they will execute such further documents as may be necessary to effectuate the intent of this Agreement.

10. TAXES. Hurley and the Corporate Entities agree that they will hold harmless and indemnify Currie for and against any charges or assessments which may be brought or levied against Currie relative to any federal, state, and/or local incomes taxes, or other taxes or payments of any kind which may be required to be paid on account of Currie's receipt of the Consideration described in Paragraph 2 above, including but not limited to payment of all reasonable attorneys' fees and costs incurred by Currie in obtaining the full payment or reimbursement of any taxes, interest and/or tax penalties.

11. DEFAULT. Hurley and the Corporate Entities, without notice or demand of any kind, shall be in default under this Agreement upon the occurrence of any of the following events (each an "Event of Default"):

A. Any Indebtedness is not paid when due.

B. Any oral or written warranty, representation, certificate or statement, in this Agreement or the Security Documents, including paragraph [6] of this Agreement, shall be false when made or at any time.

C. Any failure to perform in the performance of any covenant, condition or agreement contained in this Agreement or in the Security Documents or any other agreement with Currie.

D. Any Obligor makes an assignment for the benefit of creditors, fails to pay, or admits in writing its inability to pay its debts as they mature.

E. Any proceeding involving any Obligor is commenced by or against such Obligor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute of federal government or any state government.

F. The entry of any judgment, decree, levy, attachment, garnishment or other process, or the filing of any judgment lien against any Obligor which is not fully covered by insurance.

G. The death of any Obligor who is a natural person.

H. The determination by Currie that a material adverse change has occurred in the financial condition of any Obligor.

12. **RIGHTS UPON EVENT OF DEFAULT.** Upon an Event of Default, Currie may immediately take such steps or avail itself of such rights as may be available to it under this Agreement or the Security Documents.

13. **INTEGRATION.** This Agreement, along with the Security Documents, constitutes a single, integrated written contract expressing the entire agreement between the parties hereto. There are no other agreements, written or oral, expressed or implied, between the parties hereto, except as set forth in this Agreement.

14. **CONFIDENTIALITY.** The terms and conditions of this Agreement and the basis for any claims and negotiations leading to it will be kept confidential and will not be communicated to any other person or entity, except as required by law, and except on a limited basis as required for financial or other required disclosure.

15. **SEVERABILITY.** Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state law, federal law or any other applicable law, the validity and enforceability of the remaining portions or provisions of this Agreement shall not be affected thereby.

16. **DOCUMENT PREPARATION.** Each of the parties hereto has joined in and contributed to drafting this Agreement and each of the parties hereto hereby agrees that there shall be no presumption favoring or burdening any one or more parties hereto based upon draftsmanship.

17. **COUNTERPARTS.** This Agreement may be executed in counterparts, each of which shall be deemed equally authentic. This Agreement will be deemed effective when signed by all parties hereto.

18.  **BINDING EFFECT.** This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors, heirs, personal representatives and assigns.

19.  **NO WAIVER.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

20.  **GOVERNING LAW.** This Agreement shall be deemed to have been executed and delivered within the State of Michigan, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Michigan without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

WITNESS

Currie Associates, Inc.

By: _____

Its:_____


_____          _____
                                          Lyn Hurley


_____          _____
                                          Jeffrey Hurley


                                          Environmental Investigations, Inc.

_____          By:_____

                                          Its: PRESIDENT

J.D. Hurley & Associates, Inc. f/k/a
Site Resource Corporation

By: _____

Its: _____PRESIDENT_____

Hurley Farms, Inc.

By: _____

Its: _____PRESIDENT_____

924430v2

## SETTLEMENT AND RELEASE AGREEMENT AMENDMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT AMENDMENT ("SRA AMENDMENT")** is made by and between Currie Associates, Inc. ("Currie"), and Lyn Hurley, Jeffery Hurley (collectively "Hurley"), Environmental Investigations, Inc., J.D. Hurley & Associates, Inc. f/k/a Site Resource Corporation, and Hurley Farms, Inc. (collectively the "Corporate Entities") (Hurley and the Corporate Entities each an "Obligor" and together the "Obligors").

### RECITALS:

**WHEREAS**, the undersigned parties are all of the original parties to a certain SETTLEMENT AND RELEASE AGREEMENT dated June 30, 2003 (the "SRA") (a copy which is attached and incorporated herein by reference); and

**WHEREAS**, all of the parties now desire to amend the SRA for the purposes of extending a certain payment provision, reaffirming certain debts, and reaffirming all of the written agreements made by and amongst the parties to and in the SRA;

**NOW, THEREFORE**, in consideration of the foregoing recitals, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT:

**1.** **Extended Payment Term.** Paragraph 2.D. of the SRA is deleted in its entirety and a new Paragraph 2.D. is hereby substituted for the same which shall read in full as follows:

> No later than June 30, 2009 (six years after the date of execution of this Agreement). Hurley shall pay to Currie all amounts due and owing under this Agreement, together with all unpaid interest. This payment is intended to be a final payment of any part of the Settlement Sum, plus interest, which have not been paid in full as of June 30, 2009. Hurley and the Corporate Entities acknowledge and represent that their inability to sell any property shall not be considered an excusable reason not to pay all amounts due and owing at that time, and that the full Settlement Sum, less any amounts of principal already paid, shall be paid in full on that date.

**2.** **Full Force and Effect.** The SRA (as amended by this SRA AMENDMENT) and all Exhibits attached thereto, shall, in all other respects, remain in full force and effect.

**3.** **Ratification.** Each of undersigned reaffirms, ratifies, confirms, and approves his, her, and its respective obligations and duties under the SRA and all Exhibits attached thereto as modified by this SRA AMENDMENT.

1

**4.     [INTENTIONALLY DELETED.]**

**5.     Additional Representations.**  Each of the Obligors represents and warrants to Currie that:

(a)     (i)     Obligors execution, delivery, and performance of this SRA AMENDMENT and all agreements and documents attached hereto have been duly authorized by all necessary entity action and do not and will not require any consent or approval of its shareholders, violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination, or award presently in effect having applicability to it or of its articles of incorporation or by-laws, or result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Obligor is a party or by which it or its properties may be bound or affected;

(ii)     No authorization, consent, approval, license, exemption of or filing a registration with any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, is or will be necessary to the valid execution, delivery, or performance by the Obligors of this SRA AMENDMENT and all agreements and documents attached hereto; and

(iii)     This SRA AMENDMENT and all of the documents attached hereto by any one or more of the parties (other than Currie) are the legal, valid, and binding obligations of each such party enforceable against each such party in accordance with the terms thereof.

(b)     After giving effect to the amendments contained herein and effected in accordance herewith, all representations and warranties contained in the SRA and the Exhibits attached hereto are true and correct on and as of the date hereof with the same force and effect as if made on and as of the date hereof.

(c)     None of the Obligors or any one or more of them has assigned any claim, set off, or defense to any individual or entity.

(d)     This SRA AMENDMENT, the SRA and all Exhibits attached thereto, and all of the other written material delivered by any one or more of the Obligors to Currie in connection with the transactions contemplated hereby do not contain any statement that is false or misleading with respect to any material fact and do not omit to state a material fact necessary in order to make the

2

statements therein not false or misleading. There is no additional fact of which any party is aware that has not been disclosed in writing to Currie that materially affects adversely or, so far as each party can reasonably foresee, will materially affect adversely any party's financial condition, business prospects, or any property any of the Obligors has an interest in.

6. **Assignment.** This SRA AMENDMENT, the SRA and all Exhibits attached thereto, may not be assigned by any Obligor without the express written consent of Currie. In the event Currie desires to sell, assign, or otherwise transfer any or all of its right, title, and interest in and to any or all of the SRA (as amended by this SRA AMENDMENT) and all Exhibits attached thereto, or any of the property that is the subject matter of the SRA, Obligors agree:

>   (i)     not to raise any objection or defense to any such sale, assignment, or transfer;

>   (ii)    to waive any and all defenses one or more of the Obligors may have now or in the future to such a sale, assignment, or transfer; and

>   (iii)   to execute such further documents as may be reasonably necessary to effectuate such sale, assignment, or transfer including, but not limited to, executing (a) documents informing the Lapeer County Circuit Court that such a sale, assignment, or transfer has taken place, and that Obligors do not to raise any objection or defense to any such sale, assignment, or transfer, and (b) such other documents as may be reasonably required by any purchaser, assignee, or transferee acknowledging and ratifying Obligors' obligations to purchaser, assignee, or transferee subsequent to the sale, assignment, or transfer.

7. **Document Preparation.** Each of the parties hereto has joined in and contributed to drafting the SRA AMENDMENT and each of the parties hereto hereby agrees that there shall be no presumption favoring or burdening any one or more parties hereto based upon draftsmanship.

8. **Counterparts.** This SRA AMENDMENT may be executed in counterparts, each of which shall be deemed equally authentic. This SRA AMENDMENT shall be deemed effective when signed by all parties hereto.

9. **Governing Law.** This SRA AMENDMENT shall be deemed to have been executed and delivered within the State of Michigan, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Michigan without regard to principles of conflict of laws.

3

**THIS SRA AMENDMENT** is entered into on this 29 day of November, 2006.

Witnesses:

**Currie Associates, Inc.,**
a Michigan corporation

by:
name:   Scott Currie
as:      President

name: THOMAS G. PLUNKETT

name: _____

Lyn Hurley

name: _____

Jeffrey Hurley

**Environmental Investigations, Inc.**

By:
Jeffery Hurley

name: _____

Its:    President

**J.D. Hurley & Associates, Inc., f/k/a
Site Resource Corporation**

By:
Jeffery Hurley

name: _____

Its:    President

**Hurley Farms, Inc.**

By:
Jeffery Hurley

name: _____

Its:    President

4

# EXHIBIT 2

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LAPEER

CURRIE ASSOCIATES, INC.,
a Michigan Corporation,

        Plaintiff,

v.

Case No. 02-031559-CZ(H)
Hon. Nick O. Holowka

LYN HURLEY AND JEFFREY HURLEY,
jointly and severally

        Defendants.

_____/

**JEFFREY D. WEISSERMAN** (P40470)
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226
(313) 961-8380



**ROBERT L. STEFANI** (P43856)
Robert L. Stefani, P.C.
Attorney for Defendants
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

_____/

## STIPULATED ORDER OF DISMISSAL WITHOUT PREJUDICE

At a session of said court held in
the City of Lapeer, County of Lapeer
State of Michigan, on   7-10-03

Present: Hon._____
           CIRCUIT COURT JUDGE

This matter is entered with respect to the following facts:

A.    Lyn Hurley was employed by Currie from June 6, 1992 through June 21, 2002. Lyn Hurley is married to Jeffrey Hurley. The Corporate Entities are owned by Hurley.

0887070.02

JAFFE RAITT HEUER & WEISS, P.C.

B.   While employed by Currie, Lyn Hurley was entrusted with access to Currie's checking account and the funds therein.

C.   While employed by Currie, Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit of herself, Jeffrey Hurley and/or the Corporate Entities using funds belonging to Currie. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie's books and records so as to conceal her wrongful actions.

D.   During her employment with Currie, Lyn Hurley misappropriated funds from Currie totaling approximately $340,375.00 (the "Misappropriated Funds"). .

E.   The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the Corporate Entities.

F.   On or about July 1, 2002, a Stipulated Preliminary Injunction was entered by this Court restraining Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of the Order, from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally.

G.   The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the Corporate Entities.

H.   The parties, in order to avoid further expense and inconvenience resulting from continuing the prosecution and defense of any claims arising out of the Suit, deem it to be in their best interests and to their mutual advantage to settle, adjust and compromise their claims on the terms and conditions set forth in a certain Settlement Agreement dated June **30**, 2003.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that this matter shall be and hereby is dismissed without prejudice. The Stipulated Preliminary Injunction dated July 1, 2002 shall remain in force and effect until further order of this Court. The Court retains jurisdiction of this matter to enforce the Stipulated Preliminary Injunction and any other orders of the Court.

CIRCUIT COURT JUDGE

7/10/03

JAFFE RAITT HEUER & WEISS, P.C.

Stipulated as to form and substance:


_MELANIE LAFAVE_ (P27777)
**MELANIE LAFAVE (P27777)**
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226
(313) 961-8380


**ROBERT L. STEFANI** (P43856)
Robert L. Stefani, P.C.
Attorney for Defendants
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

JAFFE RAITT HEUER & WEISS, P.C.

# EXHIBIT 3

FILE COPY

**DONALD K. CURRIE REVOCABLE TRUST**
U/A/D 07/28/1998
Eleni C. Currie, Co-Trustee
Thomas H. Howlett, Co-Trustee
1670 Northlawn Boulevard
Birmingham, MI 48009

October 15, 2007

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECIPT REQUESTED</u>

Lyn Hurley, Jeffory Hurley
Environmental Investigations, Inc.
J.D. Hurley & Associates, Inc.
(f/k/a Site Resource Corporation)
Hurley Farms, Inc.
5378 Wilson Road
Columbiaville, MI 48421

> Re: Assignment of Settlement and Release Agreement Dated June 30, 2003 made by and among Currie Associates, Inc., Lyn Hurley, Jeffery Hurley, Environmental Investigations, Inc., J.D. Hurley & Associates, Inc. (f/k/a Site Resource Corporation), and Hurley Farms, Inc. ("Settlement and Release Agreement")

Dear Mr. and Mrs. Hurley:

As you are aware, the above-referenced Settlement and Release Agreement was transferred to the Estate of Donald K. Currie ("Estate"). Please be advised that the Estate is now transferring all of its right, title, and interest into the Settlement and Release Agreement and all related documents (such as the Promissory Note referenced therein) to the Donald K. Currie Revocable Trust U/A/D 07/28/1998. As such, please make all future payments to the following payee:

**DONALD K. CURRIE REVOCABLE TRUST U/A/D 07/28/1998**

If you should have any questions, please contact Mrs. Eleni C. Currie, Co-Trustee of the Donald K. Currie Revocable Trust. Thank you for your cooperation in this matter.

Very truly yours,

DONALD K. CURRIE REVOCABLE TRUST

By: Eleni C. Currie
Its: Co-Trustee

By: Thomas H. Howlett
Its: Co-Trustee

# EXHIBIT 4

We recently met with Pete Whitman of Whitman Commercial regarding the continued listing of our commercial building (303 W. Nepessing Street). The purpose of our discussion was to determine the market value of the property, considering the current economic conditions for resale purposes. It was determined that if the building has leases with three primary users (i.e. lower front-$800 per/month, lower rear-$500 per/month & second floor-$500 per/month) the market value of the building to an investor/purchaser is $250,000. Additionally, we wanted to determine how/where Whitman Commercial was advertising the building. Unfortunately, it appears that the extent of the advertising being done by Whitman Commercial is word of mouth and printed hand-outs (available at there office). Basically, if a potential client calls in inquiring about available properties/current listings our property is being represented.

Based on this information and the fact that this is our largest asset in terms of paying down our debt to Currie, we have decided to re-list the property with Exit Reality here in Lapeer. Our agent, Jennie McCorkle will advertise the through the realtors MLS Listings, internet advertising, listings on Exit's website along with printed hand-outs. Jeannie is also a member of the Downtown Development Authority and has first hand knowledge of new businesses' looking to move into the Lapeer area. Conversations with Mrs. McCorkle confirmed the market value of the property previously discussed with Whitman. Attached is a copy of our current listing agreement with Exit for your review.

Currently, we have the lower front of the building leased to Nami Thumb for $800 a month plus utilities. Two different parties are currently looking at the lower rear tenet space (Lapeer Board of Realtors and/or retail sales establishment-$500 per month plus utilities). Additionally, a physician is looking at the rear upstairs space for a small private office use ($500 per month plus utilities). Currently, J4 utilizes the upper front portion of the building.


# EXCLUSIVE RIGHT-TO-SELL LISTING AGREEMENT
## Commercial & Industrial/Business Opportunity

TO: LISTING BROKER: __Exit Realty Group__, his successors or assigns   Office ID # __32730__   Contract Date _____

1. **DURATION OF LISTING:** In consideration of your undertaking to find a purchaser for the real estate described in paragraph 2 of this Agreement, Owner(s) represent that I am/we are the owner(s) of said property and have the right to execute this contract. Owner(s) hereby grant unto Broker and Broker's representatives, agents, sub-agents and cooperating Broker the sole and exclusive right to show, offer for sale and sell the described property as shown on the attached Listing Services Disclosure Addendum which is hereby incorporated herein and made a part thereof from the contract date above until 11:59 P.M. on _____

   This Agreement shall bind owner(s) heirs, personal representatives, administrators, executors, assigns and successors. Upon full execution of an Agreement of Sale, all rights and obligations of this Listing Agreement will automatically extend through the date of the actual closing of said Agreement of Sale.

   Owner(s) acknowledge that Broker has a copyright on the listing data, including, but not limited to, all text, photographs and remarks in connection therewith, and that this listing data may not be used by any other party without Broker's consent.

2. **PROPERTY DESCRIPTION:** Owner(s) hereby offer for sale property located in the County of __Lapeer__, Michigan,

   municipality of __Lapeer__   Described as: _____

   also being commonly known as __303 W Nepessing, Lapeer, MI 48446__
   (STREET ADDRESS)

3. **ITEMS INCLUDED:** The property described above includes all fixtures, improvements and appurtenances including if now in or on the property the following

   _____

4. **PRICE AND CONDITIONS:** Owner(s) authorize Broker to offer the property for a price of $ __249,900__ to be paid as follows (mark all that apply)
   ☒ Cash   ☒ Cash to new mortgage   ☐ Cash to existing mortgage
   ☐ Land Contract: LC Down Payment $_____ LC Interest Rate _____ % LC Terms Months: _____ LC Inc. Tax/Inc: Y ☐ N ☐ LC Monthly Pmt $_____

5. **OCCUPANCY:** Owner(s) agree to provide possession of the property to the purchaser, subject to all existing leases and rights of tenants in possession, within_____ days of the date of closing and pay a use occupancy fee of $ _____ per day from date of closing through date of vacancy.

6. **COMMISSION AMOUNT AND OBLIGATION TO PAY:** If a ready, willing and able purchaser is obtained by you, me or anyone, during the term of this contract or any extension of this contract, owner(s) authorize, at the prices and conditions herein named, or upon any other price, terms or exchange to which owner(s) consent, owner(s) agree to pay you_____% of the selling price or _____ dollars and commission for services rendered. Owner(s) understand that a Brokers compensation for services rendered in respect to any listings is solely a matter of negotiation between the Broker and the seller and is not fixed, controlled, recommended or maintained by any persons not a party to the listing agreement.

7. **PROTECTION PERIOD BEYOND THE EXPIRATION DATE:** Owner(s) further agree that the previously stated commission amount shall be paid to Broker if the property is sold, conveyed, leased, rented or otherwise transferred within __180__ days after expiration of this agreement, or any extension thereof, to anyone with which Broker or Broker's agents, representatives or subagents have had negotiations prior to the final termination of this agreement. However, owner(s) shall not be obligated to pay such commission if owner(s) have entered into a valid listing agreement with another REALTOR® during the term of this protection period and a sale, lease or exchange of property is made during the term of said protection period.

8. **AUTHORIZATION TO PLACE LISTING WITH MIREALSOURCE AND PUBLISH SALE PRICE:** Owner(s) hereby grants Broker permission to submit the property to MIReal Source and/or to any other multiple listing service to which Broker may belong or subscribe for dissemination of the data to its members and to electronic or print advertising publications and the owner agrees to abide by the rules and regulations of MiRealSource. Broker is further authorized to publish the sale price upon consummation of the sale.

9. **CERTIFICATION OF ACCURACY OF DATA:** Owner(s) has/have reviewed the data provided by the Owner and hereby certifies to Broker that all such data, specifically including but not limited to the principal residence exemption, and all information in connection with liens, mortgages and/or judgments on the above described property, is to the best of Owner's knowledge correct and that Broker will rely upon such data as being complete and accurate and Owner(s) warrant and covenant that to the best of Owner's knowledge the above described property contains no defects or violations of law (except as may be noted in the Seller's Disclosure Statement).

   Owner(s) agree that you may immediately terminate this Agreement at any time and for any breach of this paragraph, upon written notice to owner(s).

10. **INDEMNIFICATION BY OWNER(S):** Owner(s) agree to indemnify and hold Broker and Broker's representatives, agents, sub-agents and cooperating Broker harmless to any damages or costs that Broker or Broker's representatives, agents, sub-agents and cooperating Broker may incur because of Owner's failure to disclose any violations or defects and/or for any dangerous conditions on the subject property. Owner(s) shall indemnify and hold Broker and Broker's representatives, agents, sub-agents and cooperating Broker harmless from any and all liability for any reason as a result of injury to persons or damage or loss to property arising out of the showing of the above described property pursuant to this listing.

   Owner(s) acknowledges that Broker assumes no responsibility for monitoring or maintaining the above described property or for any damage that might result from any weather condition, including a freeze. Owner(s) acknowledges that Broker has recommended that the subject property be professionally winterized by a licensed plumber and that the heat and electricity remain in service.

11. **AGENCY OF COOPERATING BROKERS:** Owner(s) acknowledge that you have informed owner(s) of the potential agency positions which cooperating Brokers may assume in regard to the sale of my (our) property. Owner(s) also acknowledge that it is your firm's policy to offer a portion of the commission to cooperating Brokers in order to stimulate their interest in selling my (our) property. The agency positions you offer and the portion of the commission your firm shares with cooperating Brokers is as follows: (MARK ONLY THOSE WHICH APPLY, THOSE LEFT BLANK DO NOT APPLY)

   ☐ A) You offer sub-agency to other Participants of the MiRealSource and offer a portion of the total commission for acting as a SUB-AGENT. Said portion of the agreed commission to be _____ 3 % of the sale price or $_____.

   ☐ B) You offer to other Participants of the MiRealSource a portion of the total commission due as compensation for acting as a BUYER'S AGENT. Said portion of the agreed commission to be _____ 3 % of the sale price or $_____.

**InstanetForms** This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.

_____   _____   _____
DATE   INITIAL   INITIAL

☐ C) Your offer to other Participants of the MiRealSource a portion of the total commission due as compensation for acting as a TRANSACTION COORDINATOR. Said portion of the agreed commission to be _____ % of the sale price or $_____.

Owner(s) further acknowledge that you shall not be obligated to pay more than the above stated compensation.
Owner(s) also understand and agree that the compensation paid by a listing Broker to a cooperating Broker in respect to any listing is established by agreement between the listing Broker and the seller and is not fixed, controlled, recommended or maintained by persons other than the listing broker and seller.

12. **BROKER'S AGENCY POLICY:** Owner(s) acknowledge that your company's agency policy is that you and your firm: *(MARK ONLY ONE)*

☐ A) offer agency services to buyers and sellers and practices consensual disclosed dual agency. Since owner(s) desire that you include owner(s) property in offerings to any such potential buyers, owner(s) understand and agree that in the event of consensual disclosed dual agency the following provisions shall govern you and your firm's actions:

All licensed members of your firms shall:
1. not knowingly say or do anything which might place one party at a disadvantage, such as disclosure of personal confidences.
2. assume a role as an intermediary and/or mediator to assist buyer and seller.
3. not disclose to the buyer that seller might accept an offer other than the listed price or a sum offered in a prior counter offer to this buyer.
4. not disclose to the seller that buyer might be willing to pay a higher price than that contained in any written "Buy & Sell Agreement" from that purchaser.

☐ B) represent Seller's ONLY and your firm never represents a purchaser or offers Buyer agency services.

☐ C) practice single agency, even though you do offer buyer agency services. Owner(s) understand that it is your policy that when a buyer client is interested in a property your firm has listed, your firm allows for a temporary release of both parties from that agreement so that when showing or selling owner's property you give up your agency relationship with the purchaser and represent me (us), the seller, exclusively.

☐ D) offer buyer agency services as well as seller agency services. Owner(s) understand that when you have a Buyer client that has an interest in a company listing you will release both that client and owner(s) from our respective agency agreements with you and will then handle the transaction in the capacity of a Transaction Coordinator.

13. **TITLE INSURANCE:** Owner(s) represents that owner(s) is in peaceful possession of the property, that the title is marketable, subject to building and use restrictions and easements of record. Owner(s) further agrees that upon presentation to owner(s) of an acceptable "Buy & Sell Agreement," owner(s) shall furnish the purchaser with a Commitment of Title Insurance prior to closing, and after closing, an Owner's Policy of Title Insurance in the amount of the purchase price, bearing a date after the consummation of the sale and guaranteeing the title in the condition required for performance of the "Buy & Sell Agreement" along with such other legal papers as are necessary to consummate the sale.

14. **AUTHORIZATIONS:** If the Broker is offering the following services as disclosed in the Listing Services Disclosure Addendum, Broker is hereby authorized to place a "for sale" sign on said property, to remove any other real estate "for sale" signs. Broker is authorized to photograph the property and publish such photographs and information in related publications at your discretion. Broker, Broker's representatives, agents and subagents are hereby granted access to the property and all part thereof for the purpose of showing the same at reasonable hours. Owner(s) also authorize you to obtain information on encumbrances which may be required to facilitate a sale. Further, Broker ☐ is ☐ is not authorized to place a lock box on the property to facilitate the showing of the property.

15. **NON-DISCRIMINATION CLAUSE:** It is agreed by the Broker and Seller, parties to this listing agreement, that as required by law, discrimination because of RACE, COLOR, RELIGION, SEX, AGE, A DISABILITY, MARITAL STATUS, OR NATIONAL ORIGIN by said parties to the sale or lease of the subject property is prohibited.

16. **CONSENT TO ADDITIONAL COMPENSATION:** Owner(s) acknowledge notice of the fact that Broker may accept a fee or consideration with regard to the placement of a loan or mortgage or life, fire, theft, flood, title or other casualty or hazard insurance or home warranty arising from this transaction and expressly consent thereto as required by the provision of Rules 321 (1) and 321 (2) promulgated under the Michigan Real Estate License Law.

17. **SUBSEQUENT "BUY & SELL AGREEMENTS":** Upon owner's acceptance of any "Buy & Sell Agreement" (except those containing specific language to the contrary) you shall not continue to advertise, show or market property, nor present any other "Buy & Sell Agreements" received after the date of acceptance.

18. **SPECIAL ASSESSMENTS:** Owner(s) agrees to pay at or before the closing for any special assessment for public improvements which have been confirmed by public authority prior to the date of closing, unless otherwise negotiated as part of the "Buy & Sell Agreement," or unless otherwise indicated in this listing agreement.

19. **OTHER PROVISIONS:** _____

20. **ENTIRE AGREEMENT; AMENDMENT OR MODIFICATION; ACKNOWLEDGMENT OF RECEIPT OF COPY:** This Listing Agreement, including the above mentioned Listing Services Disclosure Addendum constitutes the entire agreement between Broker and owner(s) and any prior negotiations or agreements, whether oral or written, are not valid unless set forth herein. No modification of this Listing Agreement shall be valid, unless made in writing and signed by both Broker and owner(s). Owner(s) acknowledge receipt of a copy of this Agreement signed and dated by all parties.

**SIGNATURE OF THE PARTIES:**

_____     _____
Broker                                Owner

_____     _____
Salesperson (Agent of the Broker)     Owner

_____     _____
Street Address                        Street Address

_____     _____
City/State/Zip                        City/State/Zip

_____  _____  _____  _____
Telephone      Date     Telephone      Telephone

This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.

Instant Forms

**ASSETS**

| | Listing Price | Credit | Debit |
|---|---|---|---|
| Lapeer Building – 303 W. Nepessing St., Lapeer<br>Currently listed with Exit Realty – Jeanne McCorkle | $249,900.00 | | |
| Leases – Bottom front $800.00 / month (leased) | | | |
| Leases – Bottom Back $500.00 / month (not leased yet) | | $800.00 | |
| Leases – Upper Front $289.00 / month (J4) | | $289.00 | |
| Mortgage Payment:<br>Property Taxes ($4,500/yr) | | | $1,089.00 |
| 35-Acres – Columbiaville<br>Currently listed with Whitman Commercial | $140,000.00 | | |

Equipment owned by Hurley Family

Backhoe – used daily for wood collecting (only source of heat in winter),
Round bales for cows
Used on some job sites – remedial work                                         monthly fuel cost:            30.00

John Deere Tractor – field work on farm and J4 field mowing/clearing work       monthly fuel cost:            30.00

John Deere Mowing Tractor – Mowing at farm                                      monthly fuel cost:            10.00

Trailer – Haul round bales and other farm uses

John Deere Gator Utility Vehicle – used for general maintenance cattle/wood around farm   monthly fuel cost:   10.00

2002 Salem Travel Trailer – this was unfortunately repossessed February 2010.  We were unable to make the monthly
Payment and after 4 months of being behind they took the trailer.  We still owe $5,000 to Chase Bank

1996 Jeep Cherokee – Does not run – needs new transmission, brakes               monthly fuel cost:            0.00

1999 GMC Suburban – Lyn's vehicle to and from work                               monthly fuel cost:            600.00

2002 Ford F350 – Jeff's vehicle to and from work – also needed for farm          monthly fuel cost:            300.00

Environmental Investigations, Inc.

Geoprobe Trucks – used for J4/client/consultant site work – drilling, soil/groundwater sampling
ATV Drill Rig – used for site work – drilling, soil/groundwater sampling
Ground Penetrating Radar Unit – used for J4/client site work – underground storage tanks
Grout Pump – used on drilling projects

Hurley Residence

| | | Credit | Debit |
|---|---|---|---|
| Monthly Income | Jeff's Unemployment | | |
| | Lyn | 1,520.00 | |
| | J4 (average) | 1,933.32 | |
| | | 1,000.00 | |
| | | | |
| Monthly Expense | Donald K Currie ($1,000) | | 300.00 |
| | Mortgage (still owe approximately $194,000) | | 1,360.00 |
| | DTE (plus Building's DTE) | | 150.00 |
| | Sprint | | 200.00 |
| | Insurance – Auto | | 226.56 |
| | Insurance – Building | | 211.00 |
| | Hay for cows (averages $80/wk for 16 weeks – winter only) | | 320.00 |
| | MI Child Insurance (boys) | | 10.00 |
| | School expenses (lunches, supplies) | | 100.00 |
| | Direct TV | | 68.73 |
| | Groceries | | 450.00 |
| | Credit Card Payments | | 200.00 |
| | Property Taxes ($2,800/yr.) | | |
| | | | |
| | Totals: | 5,253.32 | 5,661.29 |

We have received loans from both our parents to pay mortgages when we need it.

# EXHIBIT 5

# Michigan Department Of Energy, Labor & Economic Growth

## *Filing Endorsement*

This is to Certify that the ARTICLES OF ORGANIZATION (DOMESTIC L.L.C.)

for

**J4 DEVELOPMENT CONSULTANTS LLC**

*ID NUMBER: D2972U*

received by facsimile transmission on July 10, 2009 is hereby endorsed

Filed on July 10, 2009 by the Administrator.

The document is effective on the date filed, unless a
subsequent effective date within 90 days after
received date is stated in the document.



In testimony whereof, I have hereunto set my
hand and affixed the Seal of the Department,
in the City of Lansing, this 10TH day
of July, 2009.

*, Director*

*Bureau of Commercial Services*

Sent by Facsimile Transmission 09191

BCS/CD-700 (Rev. 01/09)

## MICHIGAN DEPARTMENT OF ENERGY, LABOR & ECONOMIC GROWTH
### BUREAU OF COMMERCIAL SERVICES

| Date Received | (FOR BUREAU USE ONLY) |
|---|---|
| | This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document. |

Name
J4 DEVELOPMENT CONSULTANTS LLC

Address
303 W. NEPESSING ST. SUITE 200

City: LAPEER    State: MI    Zip Code: 48446    EFFECTIVE DATE:

☞ Document will be returned to the name and address you enter above. ☜
If left blank document will be mailed to the registered office.

### ARTICLES OF ORGANIZATION
**For use by Domestic Limited Liability Companies**
(Please read information and instructions on last page)
*Pursuant to the provisions of Act 23, Public Acts of 1993, the undersigned execute the following Articles:*

| B |

### ARTICLE I

The name of the limited liability company is: J4 DEVELOPMENT CONSULTANTS LLC

### ARTICLE II

The purpose or purposes for which the limited liability company is formed is to engage in any activity within the purposes for which a limited liability company may be formed under the Limited Liability Company Act of Michigan.

### ARTICLE III

The duration of the limited liability company if other than perpetual is:_____

### ARTICLE IV

1. The street address of the location of the registered office is:

303 W. NEPESSING ST. SUITE 200 LAPEER , Michigan 48446
(Street Address)                                    (City)            (ZIP Code)

2. The mailing address of the registered office if different than above:

_____ , Michigan _____
(Street Address or P.O. Box)                  (City)            (ZIP Code)

3. The name of the resident agent at the registered office is: JEFFREY D. HURLEY

### ARTICLE V (Insert any desired additional provision authorized by the Act; attach additional pages if needed.)

Signed this 9TH day of JULY , 2009

By _____  _____
(Signature(s) of Organizer(s))

JEFFREY D. HURLEY / JEFFREY R. TAIT
(Type or Print Name(s) of Organizer(s))

07/10/2009  11:20PM

# EXHIBIT 6

# SECURITY AGREEMENT

THIS AGREEMENT is made on June **30**, 2003, by and between Jeffrey Hulrey and Lynn Hurley (together "Hurley"), whose residence is located at 345 E. Oregon Road, Lapeer, Michigan 48446, and Currie Associates, Inc., a corporation organized under the laws of the State of Michigan ("Currie"), whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302.

RECITALS:

A.     Hurley and Currie are parties to a certain Settlement Agreement, dated June **30** 2003 (the "Settlement Agreement").

B.     Hurley, as security for the Indebtedness (as defined in the Settlement Agreement), has provided Currie with a guaranty of the obligations of Lynn Hurley and Jeffrey Hurley under the Settlement Agreement, dated June **30** 2003 (the "Guaranty").

C.     Hurley is entering into this Agreement to secure its obligations under the Guaranty.

NOW, THEREFORE, in consideration of the Recitals and the covenants and agreements herein contained, Hurley hereby agrees as follows:

1.     **Security for Indebtedness.**  As security for the Indebtedness, Hurley hereby grants to Currie a continuing security interest in the property and interests in property described below (hereinafter referred to as the "Collateral").

2.     **Collateral.**  The Collateral covered by this Agreement is all Hurley's property described below, which it now owns or shall hereafter acquire or create immediately upon the acquisition or creation thereof, and includes, but is not limited to, any items listed on any schedule or list attached hereto:

a.     All personal property of Hurley, including without limitation:

All Accounts, including Health-Care-Insurance Receivables, and all Goods whose sale, lease or other disposition has given rise to Accounts and have been returned to, or repossessed or stopped in transit by, Hurley, or rejected or refused by an Account Debtor.

All Chattel Paper, including without limitation, Electronic Chattel Paper; Documents; Instruments, including without limitation, Promissory Notes; Letter of Credit Rights and proceeds of letters of credit; Supporting Obligations; notes secured by real estate; Commercial Tort Claims and General Intangibles, including without limitation, Payment Intangibles and Software.

All Inventory, including without limitation raw materials, work in process, materials and finished goods leased by Hurley as lessor or held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in a business.

All Goods (other than Inventory), including without limitation, Equipment.

All Securities, Investment Property and Deposit Accounts.

b. All Proceeds (whether Cash Proceeds or Noncash Proceeds) of the foregoing property, including without limitation proceeds of insurance payable by reason of loss or damage to the foregoing property and of eminent domain or condemnation awards.

c. All products of, additions and accessions to, and substitutions, betterments and replacements for the foregoing property.

d. All sums at any time credited by or due from Currie to Hurley.

e. All property in which Hurley has an interest now or at any time hereafter coming into the possession or under the control of Currie or in transit by mail or carrier to or from Currie or in possession of or under the control of any third party acting on Currie's behalf without regard to whether Currie received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether Currie has conditionally released the same (excluding, nevertheless, any of the foregoing property of Hurley which now or any time hereafter is in possession or control of Currie under any written trust agreement wherein Currie is trustee and Hurley is trustor).

Terms used and not otherwise defined in this Agreement shall have the meaning given such terms in the Michigan Uniform Commercial Code. In the event the meaning of any term defined in the Michigan Uniform Code is amended after the date of this Agreement, the meaning of such term as used in this Agreement shall be that of the more encompassing of: (i) the definition contained in the Michigan Uniform Commercial Code prior to the amendment, and (ii) the definition contained in the Michigan Uniform Commercial Code after the amendment.

3. **Perfection of Security Interest.** Hurley hereby irrevocably authorizes Currie to file financing statement(s) describing the Collateral in all public offices deemed necessary by Currie, and to take any and all actions, including, without limitation, filing all financing statements, continuation financing statements and all other documents that Currie may reasonably determine to be necessary to perfect and maintain Currie's security interests in the Collateral. Hurley shall have possession of the Collateral, except where expressly otherwise provided in this Agreement or where Currie chooses to perfect its security interest by possession, whether or not in addition to the filing of a financing statement. Where Collateral is in the possession of a third party, Hurley will join with Currie in notifying the third party of Currie's security interest and obtaining an acknowledgement from the third party that it is holding the Collateral for the benefit of Currie. Hurley will cooperate with Currie in obtaining control with respect to Collateral consisting of Deposit Accounts, Investment Property, Letter-of-Credit Rights and Electronic Chattel Paper. Hurley will not create any Chattel Paper without placing a legend on the Chattel Paper acceptable to Currie indicating that Currie has a security interest in the Chattel Paper. Hurley shall pay the cost of filing or recording all financing statement(s) and other documents. Hurley agrees to promptly execute and deliver to Currie all financing statements, continuation financing statements, assignments, certificates of title, applications for vehicle titles, affidavits, reports, notices, schedules of Accounts, designations of Inventory, letters of authority and all other documents that Currie may reasonably request in form satisfactory to Currie to perfect and maintain Currie's security interests in the Collateral. In order to fully consummate all of the transactions contemplated hereunder, Hurley shall make appropriate entries on its books and records disclosing Currie's security interests in the Collateral.

4. **Warranties and Representations.** Hurley warrants and represents: (a) except as may be otherwise disclosed in an attachment to this Agreement, Hurley has rights in or the power to transfer the Collateral and its title to the Collateral is free and clear of all liens or security interests, except Currie's security interests, (b) all Chattel Paper constituting Collateral evidences a perfected security interest in the goods covered by it free from all other liens and security interests, (c) no financing

statements, other than that of Currie, are on file covering the Collateral or any of it, (d) if Inventory is represented or covered by documents of title, Hurley is the owner of the documents free of all liens and security interests other than Currie's security interest and warehousemen's charges, if any, not delinquent; (e) Hurley's exact legal name and the address of Hurley's chief executive office are as set forth in the first paragraph of this Agreement; (f) if Hurley is a Registered Organization, the form of its organization and the State under which it is organized are as set forth in the first paragraph of this Agreement; (g) all Collateral consisting of Goods is located in the State where Hurley's chief executive office is located except as otherwise disclosed in a schedule attached to this Agreement; (h) the Collateral, wherever located, is covered by this Agreement; (i) each Account, Chattel Paper and General Intangible constituting Collateral is genuine and enforceable against the account debtor according to its terms, and it, and the transaction out of which it arose, comply with all applicable laws and regulations, the amount represented by Hurley to Currie as owing by each account debtor is the amount actually owing and is not subject to setoff, credit, allowance or adjustment except any discount for prompt payment, nor has any account debtor returned the goods or disputed his liability, there has been no default according to the terms of any such Collateral, and no step has been taken to foreclose the security interest it evidences or to otherwise enforce its payment; (j) the execution and delivery of this Agreement and any instruments evidencing Indebtedness will not violate nor constitute a breach of Hurley's Articles of Incorporation, By-Laws, Articles of Organization, Partnership Agreement, or any agreement or restriction of any type whatsoever to which Hurley is a party or is subject; (k) all financial statements and information relating to Hurley delivered or to be delivered by Hurley to Currie are true and correct and prepared in accordance with generally accepted accounting principles, and there has been no material adverse change in the financial condition of Hurley since the submission of any such financial information to Currie; (l) there are no actions or proceedings which are threatened or pending against Hurley which might result in any material adverse change in Hurley's financial condition or which might materially affect any of Hurley's assets; and (m) Hurley has duly filed all federal, state, and other governmental tax returns which Hurley is required by law to file, and will continue to file same during such time as any of the Indebtedness hereunder remain owing to Currie, and all such taxes required to be paid have been paid, in full.

5.     **Covenants.** Hurley covenants and agrees that while any of the Indebtedness remain unperformed and unpaid it will: (a) preserve its legal existence and not, in one transaction or a series of related transactions, merge into or consolidate with any other entity, or sell all or substantially all of its assets; (b) not change the state where it is located; (c) neither change its name, form of business entity nor address of its chief executive office without giving written notice to Currie thereof at least thirty (30) days prior to the effective date of such change, and Hurley agrees that all documents, instruments, and agreements demanded by Currie in response to such change shall be prepared, filed, and recorded at Hurley's expense prior to the effective date of such change; (d) not use the Collateral, nor permit the Collateral to be used, for any unlawful purpose, whatever; (e) maintain the Collateral in first-class condition and repair; and (f) indemnify and hold Currie harmless against claims of any persons or entities not a party to this Agreement concerning disputes arising over the Collateral.

6.     **Insurance, Taxes, Etc.** Hurley has the risk of loss of the Collateral. Hurley shall: (a) pay promptly all taxes, levies, assessments, judgments, and charges of any kind upon or relating to the Collateral, to Hurley's business, and to Hurley's ownership or use of any of its assets, income, or gross receipts; (b) at its own expense, keep and maintain all of the Collateral fully insured against loss or damage by fire, theft, explosion and other risks in such amounts, with such companies, under such policies and in such form as shall be satisfactory to Currie, which policies shall expressly provide that loss thereunder shall be payable to Currie as its interest may appear (and Currie shall have a security interest in the proceeds of such insurance and may apply any such proceeds which may be received by it toward payment of the Indebtedness, whether or not due, in such order of application as Currie may

determine); and (c) maintain at its own expense public liability and property damage insurance in such amounts, with such companies, under such policies and in such form as shall be satisfactory to Currie, and, upon Currie's request, shall furnish Currie with such policies and evidence of payment of premiums thereon. If Hurley at any time hereafter should fail to obtain or maintain any of the policies required above or pay any premium in whole or in part relating thereto, or shall fail to pay any such tax, assessment, levy, or charge or to discharge any such lien, claim, or encumbrance, then Currie, without waiving or releasing any obligation or default of Hurley hereunder, may at any time hereafter (but shall be under no obligation to do so) make such payment or obtain such discharge or obtain and maintain such policies of insurance and pay such premiums, and take such action with respect thereto as Currie deems advisable. All sums so disbursed by Currie, including reasonable attorney fees, court costs, expenses, and other charges relating thereto, shall be part of the Indebtedness, secured hereby, and payable upon demand together with interest at the highest rate payable in connection with any of the Indebtedness from the date when advanced until paid.

7.      **Collection of Accounts.** Currie conditionally authorizes and permits Hurley to collect Accounts from debtors. This privilege may be terminated by Currie at any time upon written notice from Currie, and upon mailing such notice Currie shall be entitled to and have all of the ownership, title, rights, securities and guarantees of Hurley in respect to Accounts, and in respect to the property evidenced thereby, including the right of stoppage in transit, and Currie shall have the right to enforce Hurley's rights against the account debtors and obligors. Thereafter Hurley will receive all payments on Account as agent of and for Currie and will transmit to Currie, on the day of receipt thereof, all original checks, drafts, acceptances, notes and other evidence of payment received in payment of or on account of Accounts, including all cash moneys similarly received by Hurley. Until such delivery, Hurley shall keep all such remittances separate and apart from Hurley's own funds, capable of identification as the property of Currie, and shall hold the same in trust for Currie. All items or accounts which are delivered by Hurley to Currie on account of partial or full payment or otherwise as proceeds of any of the Collateral shall be deposited to the credit of a deposit account (herein called the "Collateral Deposit Account") of Hurley with Currie, as security for payment of the Indebtedness. Hurley shall have no right to withdraw any funds deposited in the Collateral Deposit Account. Currie may from time to time, at its discretion, and shall upon request of Hurley made not more than once in a week, apply all or any of the then balance, representing collected funds in the Collateral Deposit Account, toward payment of the Indebtedness, whether or not then due, in such order of application as Currie may determine, and Currie may, from time to time, in its discretion, release all or any of such balance to Hurley. Hurley, if in default in the performance of any of the provisions of this Agreement, upon demand, will open all mail only in the presence of a representative of Currie, who may take therefrom any remittance on Accounts in which Currie shall have a security interest. Currie or its representatives is authorized to endorse, in the name of Hurley, any item howsoever received by Currie, representing any payment on or other proceeds of any of the Collateral, and may endorse or sign the name of Hurley to Accounts, invoices, assignments, financing statements, notices to debtors, bills of lading, storage receipts, or other instruments or documents in respect to Accounts or the property covered thereby requested by Currie. Hurley will promptly give Currie copies of all Accounts, to be accompanied by such information and by such documents or copies thereof as Currie may require. Hurley will maintain such records with respect to Accounts and the conduct and operation of its business as Currie may request, and will furnish Currie all information with respect to Accounts and the conduct and operation of its business, including balance sheets, operating statements and other financial information, as Currie may request.

8.      **Care, Custody, and Dealings with Collateral.** Currie shall have no liability to Hurley with respect to Currie's care and custody of any Collateral in Currie's possession and shall have no duty to sell, surrender, collect or protect the same or to preserve rights against prior parties or to take any action with respect thereto beyond the custody thereof, exercising that reasonable custodial care which it

would exercise in holding similar interests for its own account. Currie shall only be liable for its acts of gross negligence. Currie is hereby authorized and empowered to take the following steps, either prior or subsequent to default hereunder: (a) to deal directly with issuers, entities, owners, transfer agents and custodians to effect changes in the registered name of any such Collateral, to effect substitutions and replacements thereof necessitated by any reason (including by reason of recapitalization, merger, acquisition, debt restructuring or otherwise), to execute and deliver receipts therefor and to take possession thereof; (b) to communicate and deal directly with payors of instruments (including securities, promissory notes, letters of credit, certificates of deposits and other instruments), which may be payable to or for the benefit of Hurley at any time, with respect to the terms of payment thereof; (c) in Hurley's name, to agree to any extension of payment, any substitution of Collateral or any other action or event with respect to the Collateral; (d) to notify parties who have an obligation to pay or deliver anything of value (including money or securities) with respect to the Collateral to pay or deliver the same directly to Currie on behalf of Hurley and to receive and receipt for any such payment or delivery in Hurley's name as an addition to the Collateral; (e) to surrender renewable certificates or any other instruments or securities forming a portion of the Collateral which may permit or require reissuance, renewal or substitution at any time and to immediately take possession of and receive directly from the issuer, maker or other obligor, the substituted instrument or securities; (f) to exercise any right which Hurley may have with respect to any portion of the Collateral, including rights to seek and receive information with respect thereto; and (g) to do or perform any other act and to enjoy all other benefits with respect to the Collateral as Hurley could in its own name.

9. **Disposition of Collateral.** Currie does not authorize, and Hurley agrees not to make any sales or leases of any of the Collateral, license any of the Collateral, or grant any other security interest in any of the Collateral; provided, however, that until such time as Currie shall notify Hurley of the revocation of such power and authority, Hurley (a) may only in the ordinary course of its business, at its own expense, sell, lease or furnish under contracts of service any of the inventory normally held by Hurley for such purpose; (b) may use and consume any raw materials, work in process or materials, the use and consumption of which is necessary in order to carry on Hurley's business; and (c) will at its own expense, endeavor to collect, as and when due, all accounts due with respect to any of the Collateral, including the taking of such action with respect to such collection as Currie may reasonably request or, in the absence of such request, as Hurley may deem advisable. A sale in the ordinary course of business does not include a transfer in partial or total satisfaction of a debt. To the extent Hurley uses any proceeds of any of the Indebtedness to purchase Collateral, Hurley's repayment of the Indebtedness shall apply on a "first-in-first-out" basis so that the portion of the Indebtedness used to purchase a particular item of Collateral shall be deemed paid in the chronological order Hurley purchased the Collateral.

10. **Information.** Hurley shall permit Currie or its agents upon reasonable request to have access to, and to inspect, all the Collateral (and Hurley's other assets, if any) and may from time to time verify Accounts, inspect, check, make copies of, or extracts from the books, records, and files of Hurley, and Hurley will make same available at any time for such purposes. In addition, Hurley shall promptly supply Currie with such other financial or other information concerning its affairs and assets as Currie may request from time to time.

11. **Events of Default.** Hurley, without notice or demand of any kind, shall be in default under this Agreement upon the occurrence of any Event of Default (as defined in the Settlement Agreement).

12. **Remedies Upon Default.** Upon the occurrence of any Event of Default, any and all of the Indebtedness may (notwithstanding any provisions thereof and unless otherwise provided in any loan agreement executed in conjunction therewith), at the option of Currie, and without demand or notice of

any kind, be declared and thereupon shall immediately become due and payable and Currie may exercise from time to time any rights and remedies including the right to immediate possession of the Collateral available to it under applicable law. Currie may directly contact third parties and enforce against them all rights which arise with respect to the Collateral and to which Hurley or Currie would be entitled. Hurley waives any right it may have to require Currie to pursue any third person for any of the Indebtedness. Currie shall have the right to hold any property then in, upon or in any way affiliated to said Collateral at the time of repossession even though not covered by this Agreement until return is demanded in writing by Hurley. Hurley agrees, upon the occurrence of an Event of Default, to assemble at its expense all the Collateral and make it available to Currie at a convenient place acceptable to Currie. Hurley agrees to pay all costs of Currie of collection of the Indebtedness, and enforcement of rights hereunder, including reasonable attorney fees and legal expenses, including participation in Bankruptcy proceedings, and expense of locating the Collateral and expenses of any repairs to any realty or other property to which any of the Collateral may be affixed or be a part. If any notification of intended disposition of any of the Collateral is required by law, such notification, if mailed, shall be deemed reasonably and properly given if sent at least ten (10) days before such disposition, postage pre-paid, addressed to Hurley either at the address shown above or at any other address of Hurley appearing on the records of Currie and to such other parties as may be required by the Michigan Uniform Commercial Code. Hurley acknowledges that Currie may be unable to effect a public sale of all or any portion of the Collateral because of certain legal and/or practical restrictions and provisions which may be applicable to the Collateral and, therefore, may be compelled to resort to one or more private sales to a restricted group of offerees and purchasers. Hurley consents to any such private sale so made even though at places and upon terms less favorable than if the Collateral were sold at public sale. Currie shall have no obligation to clean-up or otherwise prepare the Collateral for sale. Currie may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral. Currie may specifically disclaim any warranties as to the Collateral. If Currie sells any of the Collateral upon credit, Hurley will be credited only with payments actually made by the purchaser, received by Currie and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Currie may resell the Collateral and Hurley shall be credited with the proceeds of sale. Currie shall have no obligation to marshal any assets in favor of Hurley. Hurley waives the right to jury trial in any proceeding instituted with respect to the Collateral. Out of the net proceeds from sale or disposition of the Collateral, Currie shall retain all the Indebtedness then owing to it and the actual cost of collection (including reasonable attorney fees) and shall tender any excess to Hurley or its successors or assigns. If the Collateral shall be insufficient to pay the entire Indebtedness, Hurley shall pay to Currie the resulting deficiency upon demand. Hurley expressly waives any and all claims of any nature, kind or description which it has or may hereafter have against Currie or its representatives, by reason of taking, selling or collecting any portion of the Collateral. Hurley consents to releases of the Collateral at any time (including prior to default) and to sales of the Collateral in groups, parcels or portions, or as an entirety, as Currie shall deem appropriate. Hurley expressly absolves Currie from any loss or decline in market value of any Collateral by reason of delay in the enforcement or assertion or nonenforcement of any rights or remedies under this Agreement. Hurley agrees that Currie shall, upon the occurrence of an Event of Default, have the right to peacefully retake any of the collateral. Hurley waives any right it may have in such instance to a judicial hearing prior to such retaking.

13. **General.** Time shall be deemed of the very essence of this Agreement. Except as otherwise defined in this Agreement, all terms in this Agreement shall have the meanings provided by the Michigan Uniform Commercial Code. Currie shall be deemed to have exercised reasonable care in the custody and preservation of any Collateral in its possession if it takes such action for that purpose as Hurley requests in writing, but failure of Currie to comply with any such request shall not of itself be deemed a failure to exercise reasonable care, and failure of Currie to preserve or protect any rights with

respect to such Collateral against any prior parties or to do any act with respect to the preservation of such Collateral not so requested by Hurley shall not be deemed a failure to exercise reasonable care in the custody and preservation of such Collateral. This Agreement has been delivered in Michigan and shall be construed in accordance with the laws of the State of Michigan. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of Currie hereunder shall inure to the benefit of its successors and assigns, and this Agreement shall be binding on all heirs, personal representatives, assigns and successors of Hurley and all persons who become bound as a debtor to this Agreement. Hurley hereby expressly authorizes and appoints Currie to act as its attorney-in-fact for the sole purpose of executing any and all financing statements or other documents deemed necessary to perfect the security interest herein contemplated.

14. **No Waiver.** Any delay on the part of Currie in exercising any power, privilege or right hereunder, or under any other instrument executed by Hurley to Currie in connection herewith shall not operate as a waiver thereof, and no single or partial exercise thereof, or the exercise of any other power, privilege or right shall preclude other or further exercise thereof, or the exercise of any other power, privilege or right. The waiver of Currie of any default by Hurley shall not constitute a waiver of any subsequent defaults, but shall be restricted to the default so waived. All rights, remedies and powers of Currie hereunder are irrevocable and cumulative, and not alternative or exclusive, and shall be in addition to all rights, remedies, and powers given hereunder or in or by any other instruments, or by the Michigan Uniform Commercial Code, or any laws now existing or hereafter enacted. Hurley acknowledges that this is the entire agreement between the parties except to the extent that writings signed by the party to be charged are specifically incorporated herein by reference either in this Agreement or in such writings, and acknowledges receipt of a true and complete copy of this Agreement.

IN WITNESS WHEREOF, this Security Agreement was executed and delivered by the undersigned on the date stated in the first paragraph above.

Witnesses:                                    **Hurley:**

By: _____
      Jeffrey Hurley

By: _____
      Lynn Hurley

10-35686-dof    Doc 22-1    Filed 12/06/10    Entered 12/06/10 17:26:12    Page 38 of 72

LIBER 1 7 7 0 PAGE 0 6 1 7

RECEIVED FOR RECORD

03 AUG 11 AM 9: 45

*Melissa De Hough*
REGISTER OF DEEDS
LAPEER COUNTY, MICHIGAN

D

## ASSIGNMENT OF PURCHASER'S INTEREST
## IN LAND CONTRACT AS SECURITY

THIS ASSIGNMENT AND MORTGAGE is made on June 30 2003, by Jeffrey Hurley and Lynn Hurley (the "Assignor"), whose address is 345 E. Oregon Road, Lapeer, Michigan 48446, to Currie Associates, Inc. ("Currie"), whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302.

30 Assignor, is justly indebted to Currie under a certain Settlement Agreement, dated June 30, 2003, by and among Assignor and Currie (the "Settlement Agreement").

IN ORDER TO SECURE payment of the Indebtedness, as defined in the Settlement Agreement, for which Indebtedness this Assignment shall be a continuing security, Assignor hereby assigns, transfers and warrants to Currie the Purchaser's interest in and to a certain land contract dated January 4, 2000, executed between Gary D. Plumb and Nancy M. Plumb, tenants in common, as Seller, and Assignor, as Purchaser (the "Land Contract"), for the sale of the premises situated in the Township of Marathon, County of Lapeer, State of Michigan, and described in Exhibit A attached hereto (the "Premises").

Assignor further hereby grants, conveys, warrants and mortgages to Currie, its successors and assigns, the land and Premises above described, together with all hereditaments, appurtenances, easements and rights of way thereof, including all buildings, improvements, fixtures and articles of personal property (which shall include all articles furnished in letting or operating the building and improvements) which are now, or shall hereafter be placed upon or be attached to the Premises in any manner, or used in conjunction therewith, all of which for the purpose of this Assignment and Mortgage are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the realty as between the parties hereto, their respective heirs, personal representatives, successors and assigns, and all persons claiming by, through or under them, and shall be deemed to be a portion of the security for the Indebtedness herein mentioned and to be subject to the lien of this Assignment and Mortgage, to secure the repayment of the Indebtedness and the performance of the covenants and conditions herein contained.

Assignor does hereby warrant, covenant, represent and agree as follows:

1

1. **Perform Covenants.** Assignor will perform all of the terms, covenants and conditions of this Assignment and Mortgage and of any note, mortgage, security agreement, agreement, guaranty, or other instruments where applicable, of even date herewith, given by Assignor to Currie and secured by this Assignment and Mortgage, including without limitation all Security Documents, as defined in the Settlement Agreement.

2. **Pay Indebtedness.** Assignor will pay the Indebtedness secured hereby, together with interest thereon, when due and payable.

3. **Taxes, Insurance and Land Contract Payments.** Assignor will: (a) pay all taxes and assessments and other charges that may be levied or assessed upon or against the premises, when due and payable; (b) keep the buildings, improvements and equipment on the premises adequately insured against damage by fire, or by any other hazard within the usual extended coverage provisions, with a loss payable clause to Currie, and to furnish Currie with evidence of payment of premiums therefor; and (c) pay all sums and to perform all of the terms and conditions under the Land Contract hereinbefore mentioned, as and when required by the terms thereof so as to maintain the Land Contract and Assignor's interest thereunder in full force and effect and to furnish Currie upon its demand with evidence of such payment and performance.

4. **Default.** Upon an Event of Default, as defined in the Settlement Agreement, the entire unpaid Indebtedness secured hereby shall immediately become due and collectible if Currie so elects, and without notice of such election, and Currie thereupon shall have any one or more of the following rights, powers and remedies:

a. To the extent that Assignor has acquired, or shall hereafter acquire, fee title to all or any portion of the above-described premises, Assignor hereby grants to Currie the power to sell such premises, including all appurtenances, fixtures and improvements situated thereon, at public auction, and upon such sale, to execute and deliver to the purchaser(s) good and sufficient deeds of conveyance pursuant to the applicable Michigan statutes governing foreclosure of mortgaged real estate by advertisement. Currie shall apply the proceeds of any sale conducted pursuant to this subparagraph (a) first to the costs and expenses incurred in connection with such sale, including attorney fees as provided by law, then to the Indebtedness due hereunder, returning the surplus, if any, to Assignor or to Assignor's heirs, legal representatives or assigns.

b. Currie is hereby authorized and empowered to pursue such other legal or equitable remedies or actions as may be provided to it by statute, or otherwise, or under any instrument evidencing or securing the Indebtedness, including, but not limited to, the right to foreclose

2

Currie's lien in equity, and in the event of any sale made pursuant to a judgment in equity for the foreclosure hereof, such sale may, at the option of Currie, be made en masse.

5. **Interest on Expenditures.** It is hereby stipulated and agreed by and between Currie and Assignor that if Assignor at any time defaults in the payment of any taxes, assessments, or insurance premiums, or in the making of any payments required to be made by Assignor under the Land Contract, that Currie may, at its sole discretion, make payments thereof, and any amounts so paid by Currie, with interest thereon from the date of payment thereof at a rate of interest of 3% per annum in excess of the rate of interest chargeable with respect to the Indebtedness secured hereby (where permitted by law, or if not so permitted by law, at the maximum contract interest rate then permitted by law) shall be impressed as an additional lien on the premises and shall be added to and become part of the Indebtedness secured hereby and shall become immediately due and payable.

6. **Evidence of Title.** Currie shall have the right to require Assignor, at reasonable intervals during the term hereof and at its cost, to submit updated evidence of title for the premises covered by the Assignment and Mortgage, including, but not limited to, abstracts of title and tax histories, title searches, or title insurance policies. In the event Assignor shall fail, refuse, or neglect to submit such evidence of title as may be required by Currie hereunder, Currie shall have the right to procure such evidence and to add the cost thereof to the Indebtedness secured by this Assignment and Mortgage.

7. **Security Interest in Personal Property.** As further and additional security for the Indebtedness hereby secured, Assignor hereby gives and grants to Currie, its successors and assigns, a lien or security interest on all personal property of any nature whatsoever, at any time in the possession of Currie, belonging to Assignor, its legal representatives and assigns, and on any balance of any deposit account of Assignor with Currie, which account may be applied by Currie in event of default of Assignor hereunder or upon the Indebtedness secured hereby in such manner as Currie, in its discretion, deems advisable.

8. **Fee Title Subject to Assignment and Mortgage.** For as long as this Assignment and Mortgage shall remain in effect, any fee simple title to the premises described above, or any part thereof, acquired by Assignor, its heirs, successors or assigns, shall be subject to this Assignment and Mortgage.

9. **Successors.** The terms, covenants, conditions, rights and benefits hereof shall inure to, and shall be binding upon, the respective heirs, legal representatives, successors and assigns

3

of the parties hereto. If more than one person joins in the execution hereof as Assignor, the obligation of such persons shall be joint and several.

10. **Miscellaneous.** The rights and remedies given to Currie under this Assignment and Mortgage shall be cumulative and in addition to, and not in substitution for, any other right or remedy available to Currie for the enforcement or collection of any of the Indebtedness secured hereby. Nothing herein contained shall be construed to bind Currie to perform any of the terms of the Land Contract or to impose any of the obligations thereof upon Currie.

Witnesses:

**ASSIGNOR:**

By: _____
        Jeffrey Hurley

By: _____
        Lyn Hurley

Drafted by: Carole J. Friedman, Esq.
  Jaffe, Raitt, Heuer & Weiss
One Woodward Avenue, Suite 2400
Detroit, MI 48226

C. Farrino

ROBERT L. STEFANI

C. Farrino

STATE OF MICHIGAN     )
                                          ) ss
COUNTY OF OAKLAND  )

Jeffrey Hurley

The foregoing instrument was acknowledged before me on Lyn Hurley, by _____, who is/are the _____ of _____, a _____, on behalf of the ⌐D. June 30, 2003

Notary Public, OAKLAND County, MI
My commission expires: 9/22/07

ROBERT LOUIS STEFANI
Notary Public, Oakland County, MI
My Commission Expires Sep. 22, 2007

4

"EXHIBIT A"

LEGAL DESCRIPTION

PARCEL "A"

THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 AND PART OF SOUTHWEST ¼ OF THE NORTHEAST 1/4 OF SECTION 29, TOWN 9 NORTH-RANGE 9 EAST, MARATHON TOWNSHIP, LAPEER COUNTY, MICHIGAN: DESCRIBED AS COMMENCING AT THE EAST 1/4 CORNER OF SAID SECTION; THENCE NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST 2047.37 FEET ALONG THE EAST-WEST 1/4 LINE OF SAID SECTION TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST 567.62 FEET ALONG SAID EAST-WEST 1/4 LINE TO THE INTERIOR 1/4 CORNER OF SAID SECTION; THENCE CONTINUING NORTH 89 DEGREES 39 MINUTES 20 SECONDS WEST 1304.56 FEET ALONG SAID EAST-WEST 1/4 LINE TO THE WEST LINE OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION AS PREVIOUSLY SURVEYED; THENCE NORTH 00 DEGREES 19 MINUTES 43 SECONDS EAST 1328.43 FEET ALONG SAID WEST LINE TO THE NORTH LINE OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION; THENCE SOUTH 89 DEGREES 38 MINUTES 03 SECONDS EAST 1302.16 FEET ALONG SAID NORTH LINE TO THE NORTH-SOUTH 1/4 LINE OF SAID SECTION; THENCE SOUTH 89 DEGREES 35 MINUTES 04 SECONDS EAST 1304.24 FEET ALONG THE NORTH LINE OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION TO THE EAST LINE OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTION; THENCE SOUTH 00 DEGREES 05 MINUTES 05 SECONDS WEST 1012.34 FEET ALONG SAID EAST LINE; THENCE NORTH 89 DEGREES 37 MINUTES 02 SECONDS WEST (RECORDED AS NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST) 445.22 FEET; THENCE SOUTH 00 DEGREES 12 MINUTES 18 SECONDS EAST 106.69 FEET; THENCE NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST 296.25 FEET; THENCE SOUTH 00 DEGREES 12 MINUTES 18 SECONDS EAST 208.13 FEET (RECORDED AS 208.75 FEET) TO THE POINT OF BEGINNING. INCLUDING THAT PART RESERVED FOR WILSON ROAD SO-CALLED. SUBJECT TO ANY RESTRICTIONS, EASEMENTS AND RIGHT OF WAYS OF RECORD.

PARCEL "B"

PART OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 29, TOWN 9 NORTH-RANGE 9 EAST, MARATHON TOWNSHIP, LAPEER COUNTY, MICHIGAN, DESCRIBED AS

COMMENCING AT THE EAST 1/4 CORNER OF SAID SECTION; THENCE NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST 1266.25 FEET ALONG THE EAST-WEST 1/4 LINE OF SAID SECTION TO THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST 33.01 FEET ALONG SAID EAST-WEST 1/4 LINE; THENCE NORTH 00 DEGREES 53 MINUTES 39 SECONDS WEST 314.85 FEET (RECORDED AS NORTH 00 DEGREES 54 MINUTES 15 SECONDS WEST 315.12 FEET); THENCE NORTH 89 DEGREES 37 MINUTES 02 SECONDS WEST (RECORDED AS NORTH 89 DEGREES 37 MINUTES 18 SECONDS WEST) 2.85 FEET TO THE EAST LINE OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF SAID SECTIONL THENCE NORTH 00 DEGREES 05 MINUTES 05 SECONDS EAST 85.23 FEET ALONG SAID EAST LINE; THENCE SOUTH 89 DEGREES 37 MINUTES 18 SECONDS EAST 34.40 FEET; THENCE SOUTH 00 DEGREES 53 MINUTES 39 SECONDS EAST 400.10 FEET TO THE POINT OF BEGINNING. INCLUDING THAT PART RESERVED FOR WILSON ROAD SO-CALLED. SUBJECT TO ANY RESTRICTIONS, EASEMENTS AND RIGHT OF WAYS OF RECORD.

RECEIVED FOR RECORD

03 AUG 11 AM 9: 45

*Melissa De Vaugh*
REGISTER OF DEEDS
LAPEER COUNTY, MICHIGAN

F

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT is made on June 30, 2003, by and between Lynn Hurley and Jeffrey Hurley (collectively, the "Assignor"), whose address is 345 E. Oregon, Lapeer, Michigan 48446, and Currie Associates, Inc. ("Currie"), whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302.

RECITALS:

A.     The Assignor and Currie are parties to a certain Settlement Agreement, dated June __, 2003 (the "Settlement Agreement"); and

B.     Assignor, to secure the Indebtedness, as defined in the Settlement Agreement, has granted to Currie an Assignment of Purchaser's Interest in Land Contract as Security (the "Land Contract Assignment and Mortgage") covering certain real property situated in the State of Michigan, as more particularly described in Exhibit A attached hereto (the "Property"), as security for the Indebtedness (as defined in the Settlement Agreement) of Assignor to Currie under the Settlement Agreement; and

C.     Assignor has demised or hereafter will demise the Property or a part thereof by a certain lease or leases for certain terms; and

D.     Currie, as a condition for entering into the Settlement Agreement secured by the Land Contract Assignment and Mortgage, has required an assignment of the leases and the rents, issues and profits derived from the use of the Property and every part thereof, as additional security for the payment of the Indebtedness.

THEREFORE, in order to provide additional security for the payment of the principal and interest of the Indebtedness, and all other amounts payable by Assignor thereunder, and any and all extensions and renewals thereof, however evidenced, and the performance of the covenants and conditions hereof, Assignor hereby covenants and agrees to and with Currie as follows:

1.     Assignor does hereby sell, assign, transfer and set over unto Currie, pursuant to Act 210 of the Public Acts of Michigan of 1953, as amended, all the rents, profits and income

under all leases or occupancy agreements or arrangements, however evidenced or denominated, upon or affecting the Property, as defined in the Land Contract Assignment and Mortgage (including any extensions, amendments or renewals thereof), whether such rents, profits and income are due or are to become due, including all such leases in existence or coming into existence during the period this assignment is in effect. This assignment shall run with the land until this assignment is discharged in full and be good and valid as against Assignor and those claiming by, under or through Assignor, from the date of recording of this assignment. This assignment shall continue to be operative during the foreclosure or any other proceedings taken to enforce the Land Contract Assignment and Mortgage. In the event of a foreclosure sale which results in a deficiency, this assignment shall stand as security during the redemption period for the payment of such deficiency. This assignment is given as collateral security only and does not and shall not be construed as obligating Currie to perform any of the covenants or undertakings required to be performed by Assignor in any leases.

2.   Assignor covenants and agrees not to cancel, accept a surrender of, modify or alter (orally or in writing), reduce the rental under or consent to the assignment or subletting of the lessee's interest in, any lease affecting the Property, except in the ordinary course of business and on commercially reasonable terms, or to make any other assignment, pledge or other disposition of such leases, or any of them, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Currie, shall be null and void.

3.   Assignor warrants and represents that all leases or copies of leases which have been delivered to Currie are in full force and effect and there are no defaults existing thereunder, and that Assignor has not: (a) executed any prior assignments presently subsisting of any leases or rentals pertaining to the Property, (b) performed any acts or executed any other instruments which might prevent or limit Currie's operating under any of the terms and conditions of the Land Contract Assignment and Mortgage, (c) executed or granted any modification whatever of any lease pertaining to the Property which has not been disclosed to Currie, or (d) subordinated any lease to the lien of the Land Contract Assignment and Mortgage, except on terms acceptable to Currie.

4.   Until the occurrence of an Event of Default (as defined in the Settlement Agreement), Assignor may receive, collect and enjoy the rents and income from the Property. Upon the occurrence of an Event of Default, Currie shall be entitled to, at its option, to enter upon the Property, or any part thereof, by its officers, agents, or employees, and: (a) collect the rents and income from the Property as long as an Event of Default exists and during the pendency of any foreclosure proceedings and, if there is a deficiency, during any redemption period, (b) rent or lease the Property or any portion thereof upon such terms and for such time as it may deem best, (c) operate or maintain the Property, (d) maintain proceedings to recover rents or possession of the Property from any tenant or trespasser, and apply the net proceeds of such rent and income, after payment of all proper charges and expenses, to the following purposes: (1) payment of all of the costs and expenses incurred by Currie in exercising its rights under this paragraph; (2) payment of interest and principal secured by the Land Contract Assignment and Mortgage; (3) payment of all other sums secured hereby; (4) payment of expenses of preserving the Property, including taxes and insurance premiums. Notwithstanding the foregoing, Currie, in

its sole discretion, may change the priorities set forth above for the application of the net proceeds of such rent and income. The Assignor hereby authorizes Currie in general to perform all acts necessary for the operation and maintenance of the Property in the same manner and to the same extent that the Assignor might reasonably so act. Currie shall only be accountable for money actually received by it pursuant to the assignment contained in this paragraph. Such entry and taking possession of the Property, or any part thereof, by Currie, may be made by actual entry and possession, or by written notice served personally upon or sent by certified mail to the last address of the Assignor appearing on the records of Currie, as Currie may elect, and no further authorization or notice shall be required. **ASSIGNOR HEREBY WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE AND WAIVES ANY RIGHT TO ANY HEARING JUDICIAL OR OTHERWISE PRIOR TO CURRIE EXERCISING ITS RIGHTS UNDER THE ASSIGNMENT CONTAINED IN THIS PARAGRAPH.**

5.      Currie and its duly authorized agents shall be entitled to enter the Property for the purpose of delivering any and all such notices and other communications to the tenants and occupiers thereof or to take such other steps as shall be necessary or desirable in Currie's discretion to exercise its rights hereunder, and Currie and its agents shall have absolutely no liability to Assignor arising therefrom, except for gross negligence or willful misconduct. Currie shall not, however, be obligated to give any tenant or occupier of the Property any notice by personal delivery and Currie may, in its sole discretion, deliver all such notices and communications by ordinary first-class U.S. mail, postage prepaid, or otherwise.

6.      The Assignor irrevocably consents that any lessee or lessees under any leases covering the Property, upon demand and notice from Currie of Assignor's default under the Land Contract Assignment and Mortgage or this assignment, shall pay all rents, issues and profits under such leases to Currie without any obligation upon any such lessee or lessees for the determination of the actual existence of any default.

7.      In the event that Assignor obstructs Currie in its efforts to collect the rents and income from the Property, or after requested by Currie, unreasonably refuses, fails or neglects to assist Currie in collecting such rent and income, Currie shall be entitled to the appointment of a receiver of the Property and of the income, rents and profits therefrom, with such powers as the court making such appointment may confer.

8.      The Assignor covenants and agrees to perform and discharge each and every obligation, covenant, and agreement required to be performed by the landlord under all leases covering the Property, and should the Assignor fail so to do, then Currie, but without obligation to do so, and without releasing the Assignor from any obligation hereof, may make or do the same in such manner and to such extent as Currie may deem necessary to protect the security hereof. Nothing herein contained shall be construed to bind Currie to perform any of the terms and provisions contained in the leases, or otherwise to impose any obligation upon Currie. Any default by the Assignor in the performance of any of the obligations contained in this paragraph, which is not cured within 30 days after notice thereof from Currie to Assignor, or, if the default is of a kind which cannot be cured within 30 days, if Assignor fails to undertake the cure of such default within 30 days after notice thereof from Currie to Assignor and thereafter diligently

pursue such cure and complete it within a reasonable time, shall constitute and be deemed to be an Event of Default under the Settlement Agreement entitling Currie to exercise the rights and remedies provided by the Land Contract Assignment and Mortgage and this assignment.

9.     Currie shall at no time have any obligation whatever to attempt to collect rent from any tenant or occupier of the Property notwithstanding that such tenants and occupiers may not be paying rent to either Assignor or to Currie. Further, Currie shall at no time have any obligation whatever to enforce any other obligations owed by tenants or occupiers of the Property to Assignor. No action taken by Currie under the Land Contract Assignment and Mortgage or this assignment shall put Currie in the position of a "mortgagee in possession."

10.     Assignor shall at no time collect advance rent under any lease upon, affecting or pertaining to the Property or any part thereof in excess of one month (other than as a security deposit) and Currie shall not be bound in any respect by any rent prepayment made or received in violation of the terms hereof.

11.     Currie shall have the right to assign the Assignor's right, title and interest in all leases covering the Property to any subsequent holder of the Land Contract Assignment and Mortgage or this assignment, and to assign the same to any person acquiring title to the Property through foreclosure or otherwise.

12.     The rights and remedies of Currie under this instrument are cumulative and are not in lieu of but are in addition to any other rights or remedies which Currie shall have under the Land Contract Assignment and Mortgage, this assignment or under any loan agreement between the parties hereto or under applicable law.

13.     All covenants and agreements contained herein shall apply to and bind the heirs, personal representatives, successors and assigns of the respective parties.

IN WITNESS WHEREOF, this Assignment was executed and delivered by the undersigned on the day and year first above written.

Witnesses:

ASSIGNOR:

C. Fantino

By: _____
   Jeffrey Hurley

By: _____
   Lynn Hurley

C. Fantino

STATE OF MICHIGAN      )
                       )ss
COUNTY OF              )

The foregoing instrument was acknowledged before me on __6/30/03__, by _Jeffrey Hurley_, who is/are the _____ of _____, a _____, on behalf _Lynn Hurley_ of the _____.

Notary Public, _OAKLAND_ County, MI
My commission expires: _9/22/07_

ROBERT LOUIS STEFANI
Notary Public, Oakland County, MI
My Commission Expires Sep. 22, 2007

DRAFTED BY:
Carole J. Friedman, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue
Suite 2400
Detroit, Michigan 48226

WHEN RECORDED RETURN TO:
Carole J. Friedman, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue
Suite 2400
Detroit, Michigan 48226

0885800.03

"EXHIBIT A"

Land in the City of Lapeer, Lapeer County, Michigan, described as:

The Northerly 80 feet of the Easterly 20 feet of Lot 13, City of Lapeer, being in the Northeast fractional quarter, Section 5, Town 7 North, Range 10 East, said quarter section known as Northeast Division, City of Lapeer. Also an undivided interest in the alley in the rear of said building, commencing on the East line of said Lot 13, 25 feet Northerly from Southeasterly corner of said Lot 13; thence Westerly 60 feet; thence Northerly 15 feet; thence Easterly 60 feet; thence Southerly 15 feet to place of beginning.

Commonly known as: 303 W. Nepessing St., Lapeer, Michigan 48446

Tax Parcel No.:     20-01-600-040-00

0885800.03

RECEIVED FOR RECORD

03 NOV 19 AM 9: 02

*Melissa D. Clark*
REGISTER OF DEEDS
LAPEER COUNTY, MICHIGAN

## DISCHARGE OF
## ASSIGNMENT OF LEASES AND RENTS

**CURRIE ASSOCIATES, INC.**, a Michigan corporation, whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302, hereby states that a certain Assignment of Leases and Rents ("Assignment") dated June 16, 2003 made to it by **LYNN HURLEY and JEFFREY HURLEY**, which Assignment was recorded in Liber 1770, Page 623, Lapeer County Records, and which Assignment pertains to property in the City of Lapeer, Lapeer County, Michigan described on Exhibit A hereto is hereby discharged.

Date:  October 17, 2003

**WITNESSES:**

_Patricia Cannon_
PATRICIA J. CANNON

CURRIE ASSOCIATES, INC.,
a Michigan corporation

By: _Donald N. Currie_
Donald Currie

STATE OF MICHIGAN      )
                          ) SS
COUNTY OF WAYNE      )

The foregoing instrument was acknowledged before me this 17th day of October, 2003, by Donald Currie of Currie Associates, Inc., on its behalf.

_Margaret A. Brennan_
Notary Public
_Oakland_ County, _Michigan_
My commission expires: _____

MARGARET A. BRENNAN
Notary Public, Macomb County, MI
My Commission Expires 05/20/2007
acting in oakland
County

**DRAFTED BY AND WHEN
RECORDED RETURN TO:**

Carole J. Friedman, Esq.
JAFFE, RAITT, HEUER & WEISS
Professional Corporation
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226

0954686.01

## "EXHIBIT A"

Land in the City of Lapeer, Lapeer County, Michigan, described as:

The Northerly 80 feet of the Easterly 20 feet of Lot 13, City of Lapeer, being in the Northeast fractional quarter, Section 5, Town 7 North, Range 10 East, said quarter section known as Northeast Division, City of Lapeer. Also an undivided interest in the alley in the rear of said building, commencing on the East line of said Lot 13, 25 feet Northerly from Southeasterly corner of said Lot 13; thence Westerly 60 feet; thence Northerly 15 feet; thence Easterly 60 feet; thence Southerly 15 feet to place of beginning.

Commonly known as: 303 W. Nepessing St., Lapeer, Michigan 48446

Tax Parcel No.:     20-01-600-040-00

RECEIVED FOR RECORD
02/04/2004 8:39:24 AM
MELISSA R. DEVAUGH
REGISTER OF DEEDS. LAPEER COUNTY MICHIGAN

RECEIPT# 348. STATION 3
$29.00 ASSIGN RENTS



LIBER 1858   PAGE 666

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT is made on January 6, 2004, by and between Lynn Hurley and Jeffrey Hurley, his wife (collectively, the "Assignor"), whose address is 345 E. Oregon, Lapeer, Michigan 48446, and Currie Associates, Inc. ("Currie"), whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302.

RECITALS:

A.    The Assignor and Currie are parties to a certain Settlement Agreement, dated June 30, 2003 (the "Settlement Agreement"); and

B.    Assignor, to secure the Indebtedness, as defined in the Settlement Agreement, has granted to Currie an Assignment of Purchaser's Interest in Land Contract as Security (the "Land Contract Assignment and Mortgage") covering certain real property situated in the State of Michigan, as more particularly described in Exhibit A attached hereto (the "Property"), as security for the Indebtedness (as defined in the Settlement Agreement) of Assignor to Currie under the Settlement Agreement; and

C.    Assignor has demised or hereafter will demise the Property or a part thereof by a certain lease or leases for certain terms; and

D.    Currie, as a condition for entering into the Settlement Agreement secured by the Land Contract Assignment and Mortgage, has required an assignment of the leases and the rents, issues and profits derived from the use of the Property and every part thereof, as additional security for the payment of the Indebtedness.

THEREFORE, in order to provide additional security for the payment of the principal and interest of the Indebtedness, and all other amounts payable by Assignor thereunder, and any and all extensions and renewals thereof, however evidenced, and the performance of the covenants and conditions hereof, Assignor hereby covenants and agrees to and with Currie as follows:

1.    Assignor does hereby sell, assign, transfer and set over unto Currie, pursuant to Act 210 of the Public Acts of Michigan of 1953, as amended, all the rents, profits and income under all leases or occupancy agreements or arrangements, however evidenced or denominated, upon or affecting the Property, as defined in the Land Contract Assignment and Mortgage (including any extensions, amendments or renewals thereof), whether such rents, profits and



income are due or are to become due, including all such leases in existence or coming into existence during the period this assignment is in effect. This assignment shall run with the land until this assignment is discharged in full and be good and valid as against Assignor and those claiming by, under or through Assignor, from the date of recording of this assignment. This assignment shall continue to be operative during the foreclosure or any other proceedings taken to enforce the Land Contract Assignment and Mortgage. In the event of a foreclosure sale which results in a deficiency, this assignment shall stand as security during the redemption period for the payment of such deficiency. This assignment is given as collateral security only and does not and shall not be construed as obligating Currie to perform any of the covenants or undertakings required to be performed by Assignor in any leases.

2. Assignor covenants and agrees not to cancel, accept a surrender of, modify or alter (orally or in writing), reduce the rental under or consent to the assignment or subletting of the lessee's interest in, any lease affecting the Property, except in the ordinary course of business and on commercially reasonable terms, or to make any other assignment, pledge or other disposition of such leases, or any of them, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Currie, shall be null and void.

3. Assignor warrants and represents that all leases or copies of leases which have been delivered to Currie are in full force and effect and there are no defaults existing thereunder, and that Assignor has not: (a) executed any prior assignments presently subsisting of any leases or rentals pertaining to the Property, (b) performed any acts or executed any other instruments which might prevent or limit Currie's operating under any of the terms and conditions of the Land Contract Assignment and Mortgage, (c) executed or granted any modification whatever of any lease pertaining to the Property which has not been disclosed to Currie, or (d) subordinated any lease to the lien of the Land Contract Assignment and Mortgage, except on terms acceptable to Currie.

4. Until the occurrence of an Event of Default (as defined in the Settlement Agreement), Assignor may receive, collect and enjoy the rents and income from the Property. Upon the occurrence of an Event of Default, Currie shall be entitled to, at its option, to enter upon the Property, or any part thereof, by its officers, agents, or employees, and: (a) collect the rents and income from the Property as long as an Event of Default exists and during the pendency of any foreclosure proceedings and, if there is a deficiency, during any redemption period, (b) rent or lease the Property or any portion thereof upon such terms and for such time as it may deem best, (c) operate or maintain the Property, (d) maintain proceedings to recover rents or possession of the Property from any tenant or trespasser, and apply the net proceeds of such rent and income, after payment of all proper charges and expenses, to the following purposes: (1) payment of all of the costs and expenses incurred by Currie in exercising its rights under this paragraph; (2) payment of interest and principal secured by the Land Contract Assignment and Mortgage; (3) payment of all other sums secured hereby; (4) payment of expenses of preserving the Property, including taxes and insurance premiums. Notwithstanding the foregoing, Currie, in its sole discretion, may change the priorities set forth above for the application of the net proceeds of such rent and income. The Assignor hereby authorizes Currie in general to perform all acts necessary for the operation and maintenance of the Property in the same manner and to


the same extent that the Assignor might reasonably so act. Currie shall only be accountable for money actually received by it pursuant to the assignment contained in this paragraph. Such entry and taking possession of the Property, or any part thereof, by Currie, may be made by actual entry and possession, or by written notice served personally upon or sent by certified mail to the last address of the Assignor appearing on the records of Currie, as Currie may elect, and no further authorization or notice shall be required. **ASSIGNOR HEREBY WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE AND WAIVES ANY RIGHT TO ANY HEARING JUDICIAL OR OTHERWISE PRIOR TO CURRIE EXERCISING ITS RIGHTS UNDER THE ASSIGNMENT CONTAINED IN THIS PARAGRAPH.**

5.     Currie and its duly authorized agents shall be entitled to enter the Property for the purpose of delivering any and all such notices and other communications to the tenants and occupiers thereof or to take such other steps as shall be necessary or desirable in Currie's discretion to exercise its rights hereunder, and Currie and its agents shall have absolutely no liability to Assignor arising therefrom, except for gross negligence or willful misconduct. Currie shall not, however, be obligated to give any tenant or occupier of the Property any notice by personal delivery and Currie may, in its sole discretion, deliver all such notices and communications by ordinary first-class U.S. mail, postage prepaid, or otherwise.

6.     The Assignor irrevocably consents that any lessee or lessees under any leases covering the Property, upon demand and notice from Currie of Assignor's default under the Land Contract Assignment and Mortgage or this assignment, shall pay all rents, issues and profits under such leases to Currie without any obligation upon any such lessee or lessees for the determination of the actual existence of any default.

7.     In the event that Assignor obstructs Currie in its efforts to collect the rents and income from the Property, or after requested by Currie, unreasonably refuses, fails or neglects to assist Currie in collecting such rent and income, Currie shall be entitled to the appointment of a receiver of the Property and of the income, rents and profits therefrom, with such powers as the court making such appointment may confer.

8.     The Assignor covenants and agrees to perform and discharge each and every obligation, covenant, and agreement required to be performed by the landlord under all leases covering the Property, and should the Assignor fail so to do, then Currie, but without obligation to do so, and without releasing the Assignor from any obligation hereof, may make or do the same in such manner and to such extent as Currie may deem necessary to protect the security hereof. Nothing herein contained shall be construed to bind Currie to perform any of the terms and provisions contained in the leases, or otherwise to impose any obligation upon Currie. Any default by the Assignor in the performance of any of the obligations contained in this paragraph, which is not cured within 30 days after notice thereof from Currie to Assignor, or, if the default is of a kind which cannot be cured within 30 days, if Assignor fails to undertake the cure of such default within 30 days after notice thereof from Currie to Assignor and thereafter diligently pursue such cure and complete it within a reasonable time, shall constitute and be deemed to be an Event of Default under the Settlement Agreement entitling Currie to exercise the rights and remedies provided by the Land Contract Assignment and Mortgage and this assignment.



9.    Currie shall at no time have any obligation whatever to attempt to collect rent from any tenant or occupier of the Property notwithstanding that such tenants and occupiers may not be paying rent to either Assignor or to Currie. Further, Currie shall at no time have any obligation whatever to enforce any other obligations owed by tenants or occupiers of the Property to Assignor. No action taken by Currie under the Land Contract Assignment and Mortgage or this assignment shall put Currie in the position of a "mortgagee in possession."

10.    Assignor shall at no time collect advance rent under any lease upon, affecting or pertaining to the Property or any part thereof in excess of one month (other than as a security deposit) and Currie shall not be bound in any respect by any rent prepayment made or received in violation of the terms hereof.

11.    Currie shall have the right to assign the Assignor's right, title and interest in all leases covering the Property to any subsequent holder of the Land Contract Assignment and Mortgage or this assignment, and to assign the same to any person acquiring title to the Property through foreclosure or otherwise.

12.    The rights and remedies of Currie under this instrument are cumulative and are not in lieu of but are in addition to any other rights or remedies which Currie shall have under the Land Contract Assignment and Mortgage, this assignment or under any loan agreement between the parties hereto or under applicable law.

13.    All covenants and agreements contained herein shall apply to and bind the heirs, personal representatives, successors and assigns of the respective parties.



IN WITNESS WHEREOF, this Assignment was executed and delivered by the undersigned on the day and year first above written.

Witnesses:                                          **ASSIGNOR:**

_Deborah A. Day_
Deborah Day
_Connie M. Morris_
Connie Morris

By: _Jeffrey Hurley_
    Jeffrey Hurley

_Deborah A. Day_
Deborah Day
_Connie M. Morris_
Connie Morris

By: _Lynn Hurley_
    Lynn Hurley

STATE OF MICHIGAN   )
                  )ss
COUNTY OF _Lapeer_  )

The foregoing instrument was acknowledged before me on _Jan 06, 2004_, by _Jeffrey Hurley_ _Lynn Hurley_, who is/are the ~~trustee~~ of ~~a~~, on behalf ~~of the~~ _h/w, each on their own behalf_

_Deborah A. Day_
Notary Public, _Lapeer_ County, MI
My commission expires: _08/03/2006_

DEBORAH A. DAY
NOTARY PUBLIC — MICHIGAN
LAPEER COUNTY
MY COMMISSION EXPIRES AUG. 3, 2006

DRAFTED BY:
Carole J. Friedman, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue
Suite 2400
Detroit, Michigan 48226

WHEN RECORDED RETURN TO:
Carole J. Friedman, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue
Suite 2400
Detroit, Michigan 48226



"EXHIBIT A"

Land in the City of Lapeer, Lapeer County, Michigan, described as:

The Northerly 80 feet of the Easterly 20 feet of Lot 13, City of Lapeer, being in the Northeast fractional quarter, Section 5, Town 7 North, Range 10 East, said quarter section known as Northeast Division, City of Lapeer. Also an undivided interest in the alley in the rear of said building, commencing on the East line of said Lot 13, 25 feet Northerly from Southeasterly corner of said Lot 13; thence Westerly 60 feet; thence Northerly 15 feet; thence Easterly 60 feet; thence Southerly 15 feet to place of beginning.

Commonly known as: 303 W. Nepessing St., Lapeer, Michigan  48446

Tax Parcel No.:      20-01-600-040-00

SEP-26-2006  18:40        H·  ·rd and Howard                        248 645 1568      P.02/05
09/26/2006 18:31          Wi·  ·ms Williams ETL          (FAX)·  ·6478056             P.002/005

┌ 1770 PAGE0601             RE⌐⌐IVED FOR RECORD                ♭

                           03 AUG 11 AM 9: 44


                           *Kelisea De Veugh*
                           REGISTER OF DEEDS
                           LAPEER COUNTY MICHIGAN

# MORTGAGE

THIS MORTGAGE is made on June 30, 2003, by and between Lynn Hurley and Jeffrey Hurley, husband and wife (collectively, the "Mortgagor"), whose address is 345 E. Oregon Road, Lapeer, Michigan 48446, and Currie Associates, Inc., ("Currie"), whose address is 2075 Franklin Road, Bloomfield Hills, Michigan 48302.

Mortgagor is justly indebted to Currie in the principal amount of Four Hundred Twenty Four Thousand Seven Hundred Twenty Four and 00/100 Dollars ($424,724.00), together with interest thereon in accordance with that certain Settlement Agreement, between Mortgagor and Currie, dated June 30, 2003 (the "Settlement Agreement"). All capitalized terms used in this Mortgage have the same meaning as that in the Settlement Agreement unless otherwise indicated.

IN ORDER TO SECURE payment of the principal and interest of the Indebtedness, Mortgagor does hereby MORTGAGE and WARRANT to Currie, its successors and assigns forever, certain real property owned by Mortgagor and situated in the State of Michigan, as more particularly described in Exhibit "A" attached hereto (the "premises"), together with (1) all the estate, title, interest and rights of Mortgagor in and to the premises and all buildings and improvements of every kind and description now or hereafter placed upon the premises or any part thereof, (2) all heretofore or hereafter vacated alleys and streets abutting the premises, (3) all furniture, fixtures, equipment and appliances, regardless of their character as personal property, including, but not limited to, all lighting, heating, cooling, ventilating, air conditioning, plumbing, sprinkling, communicating and electrical systems, and machinery, appliances, fixtures and equipment pertaining thereto, awnings, stoves, refrigerators, dishwashers, disposals, incinerators, carpeting and drapes, and all other furniture, fixtures, equipment and appliances of every type, nature and description, owned by Mortgagor and now or at any time hereafter related to, affixed to, attached to, placed upon or used in any way in connection with the use, occupancy or operation of the premises (except leased equipment and trade fixtures which, in either case, are readily removable without damaging or reducing the value or utility of the premises or the improvements thereto), all of which furniture, fixtures, equipment and appliances shall be deemed to be a part of the premises and covered by the lien hereof, and (4) all of the rents, profits, and leases thereof and the tenements, hereditaments, easements, privileges and appurtenances thereto. (Any reference herein to the "Property" shall be deemed to apply to the

0885675.06

# EXHIBIT 7

# UCC FINANCING STATEMENT
### FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Howard & Howard Attorneys, P.C.
Attn: Lee A. Sartori, Esq.
The Pinehurst Office Center, Suite 101
39400 Woodward Avenue
Bloomfield Hills, MI 48304-5151

RECORDED ON
10/24/2007 2:37:03 PM
MELISSA R. DEVAUGH
LAPEER COUNTY REGISTER OF DEED:

RECEIPT# 14953, STATION 2
$15.00   FIXTURE FILING

LAPEER COUNTY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – Insert only one debtor name (1a or 1b) – do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hurley | Jeffrey | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | U.S.A. |

| 1d. S.S. OR TAX I.D.# | ADD'NL. INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL I.D.#, IF ANY |
|---|---|---|---|---|
| | | Individual | | X NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – Insert only one debtor name (2a or 2b) – do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIC |
|---|---|---|---|
| Hurley | Lyn | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | U.S.A. |

| 2d. S.S. OR TAX I.D.# | ADD'NL. INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, IF ANY |
|---|---|---|---|---|
| | | Individual | | X NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
|---|
| Donald K. Currie Revocable Living Trust UAD 7/28/98 as amended 2/13/2004 |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIC |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1670 North Lawn Blvd. | Birmingham | MI | 48009 | U.S.A. |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL COLLATERAL DESCRIBED ON EXHIBIT "A" ATTACHED HERETO.

**5. ALTERNATIVE DESIGNATION (if applicable):** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ AG. LIEN ☐ NON-UCC FILING

**6. X** This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS

**7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] (optional)   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICER COPY-- NATIONAL FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

#306230-v1

RECEIVED OCT 24, 2007

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

19a. ORGANIZATION'S NAME

OR

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| Hurley | Jeffrey | |

20. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (21a or 21b) - do not abbreviate or combine names

21a. ORGANIZATION'S NAME

**J.D. Hurley & Associates, Inc.**

OR

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | USA |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Corporation | Michigan | MI528599 | ☐ NONE |

22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (22a or 22b) - do not abbreviate or combine names

22a. ORGANIZATION'S NAME

**Hurley Farms, Inc.**

OR

| 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | USA |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Corporation | Michigan | MI413730 | ☐ NONE |

23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (23a or 23b) - do not abbreviate or combine names

23a. ORGANIZATION'S NAME

**Environmental Investigations, Inc.**

OR

| 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | USA |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Corporation | Michigan | MI267510 | ☐ NONE |

24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (24a or 24b)

24a. ORGANIZATION'S NAME

OR

| 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (25a or 25b)

25a. ORGANIZATION'S NAME

OR

| 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)

## EXHIBIT A

## DESCRIPTION OF COLLATERAL TO UCC FINANCING STATEMENT

### DEBTORS: JEFFREY HURLEY, LYN HURLEY, HURLEY FARMS, INC., J.D. HURLEY & ASSOCIATES, AND ENVIRONMENTAL INVESTIGATIONS, INC.

### SECURED PARTY: DONALD K. CURRIE REVOCABLE LIVING TRUST UAD 7/28/98 AS AMENDED 2/13/2004

All of Debtors' fixtures, structures, buildings, appurtenances, and articles of personal property of every kind and nature whatsoever, other than consumable goods, now or hereafter located or subsequently located on the parcel of real estate located on the property more particularly described on Schedule 1 attached hereto (the "Property"), or any part thereof, and all attachments, accessions and replacements thereof; used or usable in connection with any present or future development and operation of the Property.

## SCHEDULE 1 TO EXHIBIT A

## DESCRIPTION OF PROPERTY

### DEBTORS: JEFFREY HURLEY, LYN HURLEY, HURLEY FARMS, INC., J.D. HURLEY & ASSOCIATES, AND ENVIRONMENTAL INVESTIGATIONS, INC.

### SECURED PARTY: DONALD K. CURRIE REVOCABLE LIVING TRUST UAD 7/28/98 AS AMENDED 2/13/2004

The Northerly 80 feet of the Easterly 20 feet of Lot 13, City of Lapeer, being in the Northeast fractional quarter, Section 5, Town 7 North, Range 10 East, said quarter section known as Northeast Division, City of Lapeer. Also an undivided interest in alley in the rear of said building, commencing on the East line of said lot 13, 25 feet Northerly from Southeasterly corner of Lot 13; thence Westerly 60 feet; thence Northerly 15 feet; thence Easterly 60 feet; thence Southerly 15 feet to the place of beginning.

Tax Item No. L20-01-600-040-00

Assessed as the Northerly 20 feet of the Northwesterly 80 feet of Lot 13 and an undivided interest in the Southerly 15 feet of the Northwesterly 95 feet of Lot 13.



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

## Filing Acknowledgement

October 22, 2007

**Job Number**
U20071022-0184

**Initial Filing Number**
2007164750-2

**Filing Description**
Initial Financing Statement

**Document Filing Number**
2007164750-2

**Date/Time of Filing**
10/22/2007 10:03 AM

**Debtors**

**Secured Parties**

Hurley, Jeffery
5378 Wilson Road
Colubiaville MI 48421

Donald K. Currie Revocable
Living Trust U/A/D
07/28/1998 as amended
02/13/2004
1670 North Lawn Boulevard
Birmingham MI 48009

Hurley, Lyn
5378 Wilson Road
Columbiaville MI 48421

The attached document(s) were filed with the Michigan Secretary of State, Uniform Commercial Code Section. The filing date and time have been affixed to each document, indicating the date and time of filing. A filing number is also affixed and can be used to reference this document in the future.

Michigan Department of State
Jeffry C. Nickerson
Filing Officer

███████████████
███████████████
███████████████
███████████████

A debtor may file a Correction Statement to notify the public that the debtor believes the information on record is inaccurate or that the record was wrongfully filed. The filing of a Correction Statement does not affect the status of any UCC filing, nor does the filing officer effect changes on the record as a result of a Correction Statement. A secured party may file an Amendment (Form UCC3) if the secured party wants to change or correct an existing filing.

## CORRECTION STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Michigan Department of State - Uniform Commercial Code

Document Number:

**2007164758-8**

Filing Date and Time:

**10/22/2007 10:15:18 AM**

*This document was filed electronically.*

| A. NAME & PHONE OF PERSON FILING THIS STATEMENT [optional] |
|---|
| Sara Beaulieu |

| B. SEND ACKNOWLEDGMENT TO:  (Name and Address) |
|---|
| Howard & Howard Attorneys, P.C. |
| 39400 Woodward Avenue |
| Suite 101 |
| Bloomfield Hills          MI          48304 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. Identification of the RECORD to which this CORRECTION STATEMENT relates.

| 1a. TYPE OF RECORD | 1b. FILE # OF INITIAL FINANCING STATEMENT |
|---|---|
| Initial Financing Statement | 2007164750-2 |

2a. ☑ RECORD is inaccurate.

Provide the basis for the belief of the person identified in item 4 that the RECORD identified in item 1 is inaccurate and indicate the manner in which the person believes the RECORD should be amended to cure the inaccuracy.

Spelling of Debtor's First Name is Jeff

2b. ☐ RECORD was wrongfully filed.

Provide the basis for the belief of the person identified in item 4 that the RECORD identified in item 1 was wrongfully filed.

3. If this CORRECTION STATEMENT relates to a RECORD filed [or recorded] in a filing office described in Section 9-501(a)(1) and this CORRECTION STATEMENT is filed in such a filing office, provide the date [and time] on which the INITIAL FINANCING STATEMENT identified in item 1b above was filed [or recorded].

| 3a. DATE | 3b. TIME |
|---|---|
| | |

4. NAME OF PERSON AUTHORIZING THE FILING OF THIS CORRECTION STATEMENT — The RECORD identified in item 1 must be indexed under this name.

| 4a. ORGANIZATION'S NAME |
|---|
| |

OR

| 4b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Beaulieu | Sara | Nancy | |

██████████████████
██████████████████
██████████████████
██████████████████

Michigan Department of State - Uniform Commercial Code

Document Number:

**2007164750-2**

Filing Date and Time:

**10/22/2007 10:03:05 AM**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Sara Beaulieu

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Howard & Howard Attorneys, P.C.

39400 Woodward Avenue

Suite 101

Bloomfield Hills      MI    48304



THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hurley | Jeffery | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Colubiaville | MI | 48421 | US |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hurley | Lyn | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | US |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Donald K. Currie Revocable Living Trust U/A/D 07/28/1998 as amended 02/13/2004

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1670 North Lawn Boulevard | Birmingham | MI | 48009 | US |

4. This FINANCING STATEMENT covers the following collateral:

EXHIBIT A

DESCRIPTION OF COLLATERAL TO UCC FINANCING STATEMENT

DEBTORS: JEFFREY AND LYN HURLEY
SECURED PARTY: DONALD K. CURRIE REVOCABLE LIVING TRUST UAD 7/28/98 AS AMENDED 2/13/2004
  •
  •
  •

All of Debtors™ property described below, which they now own or shall hereafter acquire or create immediately upon the acquisition or creation thereof, and includes, but is not limited to:

A.-All personal property of Debtors, including without limitation:
All Accounts, including Health-Care-Insurance Receivables, and all Goods whose sale, lease or other disposition has given rise to accounts and have been returned to, or repossessed or stopped in transit by, Debtors, or rejected or refused by an account debtor.
All Chattel Paper, including without limitation, Electronic Chattel Paper; Documents; Instruments; including without

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| Hurley | Jeffery | |

**10. MISCELLANEOUS:**

Michigan Department of State - Uniform Commercial Code

Document Number:

**2007164750-2**

Filing Date and Time:

**10/22/2007 10:03:05 AM**

*This document was filed electronically*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

| | |
|---|---|
| 11a. ORGANIZATION'S NAME | |

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| | |
|---|---|
| 12a. ORGANIZATION'S NAME | |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:
limitation, Promissory Notes; Letter of Credit Rights and proceeds of letters of credit; Supporting Obligations; notes secured by real estate; Commercial Tort Claims and General Intangibles, including without limitation, Payment Intangibles and Software.
All Inventory, including without limitation raw materials, work in process, materials and finished goods leased by Debtors as lessors or held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in a business.

All Goods (other than Inventory), including without limitation, Equipment.

All Securities, Investment Property, and Deposit Accounts.

B.·All Proceeds (whether Cash Proceeds or Noncash Proceeds) of the foregoing property, including without limitation proceeds of insurance payable by reason of loss or damage to the foregoing property and of eminent domain or condemnation awards.
C.·All products of, additions and accessions to, and substitutions, betterments and replacements for the foregoing property.
D.·All sums at any time credited by or due from the Secured Party

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Michigan Department of State - Uniform Commerical Code

Document Number:

**2007164750-2**

Filing Date and Time:

**10/22/2007 10:03:05 AM**

*(This document was filed electronically)*

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
|---|
| |

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST N ME | MIDDLE NAME,SUFFIX |
|---|---|---|---|
| | Hurley | Jeffery | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME |
|---|
| |

| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
|---|
| |

| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

to Debtors.

E.•All property in which Debtors has an interest now or at any time hereafter coming into the possession or under the control of the Secured Party or in transit by mail or carrier to or from the Secured Party or in possession of or under the control of any third party acting on the Secured Party™s behalf without regard to whether the Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether the Secured Party has conditionally released the same (excluding, nevertheless, any of the foregoing property of Debtors which now or any time hereafter is in possession or control of the Secured under any written trust agreement wherein the Secured Party is trustee and Debtors is tr ustor).

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Howard & Howard Attorneys, P.C.
Attn: Lee A. Sartori, Esq.
The Pinehurst Office Center, Suite 101
39400 Woodward Avenue
Bloomfield Hills, MI 48304-5151

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hurley | Jeffrey | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | U.S.A. |

| 1d. S.S. OR TAX I.D.# | ADD'NL. INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL I.D.#, IF ANY |
|---|---|---|---|---|
| | | Individual | | X NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME– insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hurley | Lyn | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5378 Wilson Road | Columbiaville | MI | 48421 | U.S.A. |

| 2d. S.S. OR TAX I.D.# | ADD'NL. INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, IF ANY |
|---|---|---|---|---|
| | | Individual | | X NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Donald K. Currie Revocable Living Trust UAD 7/28/98 as amended 2/13/2004 | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1670 North Lawn Blvd. | Birmingham | MI | 48009 | U.S.A. |

4. This FINANCING STATEMENT covers the following collateral:

ALL COLLATERAL DESCRIBED ON EXHIBIT "A" ATTACHED HERETO.

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICER COPY– NATIONAL FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

#277031-v1

## EXHIBIT A

## DESCRIPTION OF COLLATERAL TO UCC FINANCING STATEMENT

### DEBTORS: JEFFREY AND LYNN HURLEY
### SECURED PARTY: DONALD K. CURRIE REVOCABLE LIVING TRUST UAD 7/28/98 AS AMENDED 2/13/2004

All of Debtors' property described below, which they now own or shall hereafter acquire or create immediately upon the acquisition or creation thereof, and includes, but is not limited to:

    A.    All personal property of Debtors, including without limitation:

All Accounts, including Health-Care-Insurance Receivables, and all Goods whose sale, lease or other disposition has given rise to accounts and have been returned to, or repossessed or stopped in transit by, Debtors, or rejected or refused by an account debtor.

All Chattel Paper, including without limitation, Electronic Chattel Paper; Documents; Instruments, including without limitation, Promissory Notes; Letter of Credit Rights and proceeds of letters of credit; Supporting Obligations; notes secured by real estate; Commercial Tort Claims and General Intangibles, including without limitation, Payment Intangibles and Software.

All Inventory, including without limitation raw materials, work in process, materials and finished goods leased by Debtors as lessors or held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in a business.

All Goods (other than Inventory), including without limitation, Equipment.

All Securities, Investment Property, and Deposit Accounts.

    B.    All Proceeds (whether Cash Proceeds or Noncash Proceeds) of the foregoing property, including without limitation proceeds of insurance payable by reason of loss or damage to the foregoing property and of eminent domain or condemnation awards.

    C.    All products of, additions and accessions to, and substitutions, betterments and replacements for the foregoing property.

    D.    All sums at any time credited by or due from the Secured Party to Debtors.

    E.    All property in which Debtors has an interest now or at any time hereafter coming into the possession or under the control of the Secured Party or in transit by mail or carrier to or from the Secured Party or in possession of or under the control of any third party acting on the Secured Party's behalf without regard to whether the Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission or otherwise or whether the Secured Party has conditionally released the same (excluding, nevertheless, any of the foregoing property of Debtors which now or any time hereafter is in possession or control of the Secured under any written trust agreement wherein the Secured Party is trustee and Debtors is trustor).

# EXHIBIT 8